# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP1048 |
| COMPLETE TITLE: | In the matter of the mental commitment of Christopher S.:<br><br>Winnebago County,<br>       Petitioner-Respondent,<br>   v.<br>Christopher S.,<br>       Respondent-Appellant. |

ON CERTIFICATION FROM THE COURT OF APPEALS
(No Cites)

| | |
|---|---|
| OPINION FILED: | January 5, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 18, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Winnebago |
| JUDGE: | Scott C. Woldt |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| CONCUR & DISSENT: | ABRAHAMSON, A.W.BRADLEY, J.J., concur and dissent. (Opinion Filed) |
| NOT PARTICIPATING: | R.G. BRADLEY, did not participate. |

ATTORNEYS:

For the respondent-appellant, there were briefs by *Kaitlin A. Lamb*, assistant state public defender and oral argument by *Kaitlin A. Lamb*.

For the petitioner-respondent, there was a brief by *James A. Kearney*, assistant corporation counsel, and oral argument by *James A. Kearney*.

An amicus curiae brief was filed by *Maura F.J. Whelan*, assistant attorney general, and *Brad D. Schimel*, attorney general, on behalf of the Wisconsin Department of Justice.

**2016 WI 1**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP1048
(L.C. No. 2012ME5572)

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the matter of the mental commitment of Christopher S.:**

**Winnebago County,**

         **Petitioner-Respondent,**

     **v.**

**Christopher S.,**

         **Respondent-Appellant.**

**FILED**

**JAN 5, 2016**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from orders issued by the Circuit Court for Winnebago County, Scott C. Woldt, Judge. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of a circuit court's[1] order for the involuntary commitment of an inmate to a mental health facility, order for the involuntary

---

[1] The Honorable Scott C. Woldt, Winnebago County Circuit Court, presided.

administration of psychotropic medication and treatment to that inmate, and order denying postcommitment relief. The involuntary commitment of an inmate of the Wisconsin state prison system for mental health care is governed by Wis. Stat. § 51.20(1)(ar)(2013-14).[2] The involuntary administration of

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

For clarity and consistency, we will refer to Wis. Stat. § 51.20(1)(ar) as either Wis. Stat. § 51.20(1)(ar) or the inmate commitment statute. It contains the following:

> (ar) If the individual is an inmate of a state prison, the petition may allege that the inmate is mentally ill, is a proper subject for treatment and is in need of treatment. The petition shall allege that appropriate less restrictive forms of treatment have been attempted with the individual and have been unsuccessful and it shall include a description of the less restrictive forms of treatment that were attempted. The petition shall also allege that the individual has been fully informed about his or her treatment needs, the mental health services available to him or her under this chapter and that the individual has had an opportunity to discuss his or her needs, the services available to him or her and his or her rights with a licensed physician or a licensed psychologist. The petition shall include the inmate's sentence and his or her expected date of release as determined under s. 302.11 or 302.113, whichever is applicable. The petition shall have attached to it a signed statement by a licensed physician or a licensed psychologist of a state prison and a signed statement by a licensed physician or a licensed psychologist of a state treatment facility attesting to either of the following:

> 1. That the inmate needs inpatient treatment at a state treatment facility because appropriate treatment is not available in the prison.

(continued)

medication or treatment[3] to an individual is governed by Wis. Stat. § 51.61(1)(g).[4] While Christopher S. ("Christopher") was

_____

2. That the inmate's treatment needs can be met on an outpatient basis in the prison.

[3] Stedman's Medical Dictionary defines medication as "[t]he act of medicating," or "[a] medicinal substance, or medicament." Stedman's Medical Dictionary 1077 (27th ed. 2000).

It defines psychotropic as "[c]apable of affecting the mind, emotions, and behavior; denoting drugs used in the treatment of mental illnesses." Id. at 1480.

And it defines treatment as "[m]edical or surgical management of a patient." Id. at 1866. The definition refers to "therapy, therapeutics." Therapy means "[t]he treatment of disease or disorder by any method," or "[i]n psychiatry, and clinical psychology, a short term for psychotherapy." Id. at 1821. Finally, psychotherapy means "[t]reatment of emotional, behavioral personality, and psychiatric disorders based primarily upon verbal or nonverbal communication and interventions with the patient, in contrast to treatments utilizing chemical and physical measures." Id. at 1479.

[4] For clarity and consistency, we will refer to Wis. Stat. § 51.61(1)(g) as either Wis. Stat. § 51.61(1)(g) or the involuntary medication and treatment statute. It reads as follows:

Except as provided in sub. (2), each patient shall:

. . . .

(g) Have the following rights, under the following procedures, to refuse medication and treatment:

1. Have the right to refuse all medication and treatment except as ordered by the court under subd. 2., or in a situation in which the medication or treatment is necessary to prevent serious physical harm to the patient or others. . . .

. . . .

(continued)

3

serving his sentence for mayhem, Winnebago County filed a petition for the examination of a state prison inmate pursuant to Wis. Stat. § 51.20(1)(ar). The County sought commitment in the Wisconsin Resource Center ("WRC")[5] because Christopher was suffering from mental illness and because the WRC could meet Christopher's treatment needs. In addition, the County filed a

---

4. For purposes of a determination under subd. 2. or 3., an individual is not competent to refuse medication or treatment if, because of mental illness, developmental disability, alcoholism or drug dependence, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual, one of the following is true:

a. The individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.

b. The individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment.

[5] "The Wisconsin Resource Center (WRC) is administered by the Wisconsin Department of Health Services in partnership with the Wisconsin Department of Corrections. [The] WRC is a specialized mental health facility established as a prison under s. 46.056, Wisconsin Statutes." Wis. Dep't of Health Servs., https://www.dhs.wisconsin.gov/wrc/index.htm (last visited Nov. 6, 2015); see also Wis. Stat. § 46.056(1) ("[T]he department shall have responsibility for administering the [WRC] as a correctional institution that provides psychological evaluations, specialized learning programs, training and supervision for inmates whose behavior presents a serious problem to themselves or others in the state prisons and whose mental health needs can be met at the center.").

petition for the involuntary administration of psychotropic medication and treatment pursuant to Wis. Stat. § 51.61(1)(g)4.b.

¶2 The circuit court granted the County's petition for the involuntary commitment of Christopher for mental health care as well as the County's petition for the involuntary administration of psychotropic medication and treatment to Christopher. Christopher filed a postcommitment motion challenging both orders. The circuit court denied the motion, and Christopher appealed. The court of appeals certified the case to this court pursuant to Wis. Stat. § 809.61. We accepted certification on May 11, 2015.

¶3 Christopher makes three arguments on appeal. First, he argues that Wis. Stat. § 51.20(1)(ar) violates his substantive due process rights and is, therefore, facially unconstitutional. More specifically, Christopher claims that Wis. Stat. § 51.20(1)(ar) is unconstitutional because it authorizes the involuntary commitment of an inmate without first finding the inmate dangerous.

¶4 Second, Christopher argues in the alternative that if we refuse to hear his constitutional challenge, we should consider whether his trial attorney performed ineffectively by failing to challenge the constitutionality of Wis. Stat. § 51.20(1)(ar). Christopher makes clear that he raises his ineffective assistance of counsel argument only if we refuse to hear his constitutional challenge. Because we address the merits

5

of Christopher's constitutional claim,[6] we will not address his claim of ineffective assistance of counsel.

¶5 Third, Christopher contends that the circuit court erred when it concluded that Christopher was incompetent to refuse psychotropic medication and treatment pursuant to Wis. Stat. § 51.61(1)(g). Christopher relies on our decision in Outagamie County v. Melanie L., 2013 WI 67, 349 Wis. 2d 148, 833 N.W.2d 607, to challenge the way the circuit court applied the evidence presented at the involuntary medication and treatment hearing to the requirements contained in Wis. Stat. § 51.61(1)(g). More specifically, Christopher argues that the evidence presented at the involuntary medication and treatment hearing did not support a finding that the County complied with the statutory requirements contained in Wis. Stat. § 51.61(1)(g)4.b.

¶6 We pause briefly to point out what Christopher does not argue. Christopher does not make an as applied challenge against Wis. Stat. § 51.20(1)(ar), the inmate commitment

---

[6] Christopher did not raise his facial challenge prior to making his postcommitment motion. Nonetheless, review is appropriate because "a facial challenge is a matter of subject matter jurisdiction and cannot be waived." State v. Bush, 2005 WI 103, ¶¶17, 14-19, 283 Wis. 2d 90, 699 N.W.2d 80 (citing State v. Cole, 2003 WI 112, ¶46, 464 Wis. 2d 520, 665 N.W.2d 328).

statute.[7] Additionally, Christopher does not in any way challenge the constitutionality of the involuntary medication or treatment statute, Wis. Stat. § 51.61(1)(g).

¶7 We proceed to consider two issues raised by Christopher. The first is whether Wis. Stat. § 51.20(1)(ar) violates an inmate's substantive due process rights and is, therefore, facially unconstitutional. The second is whether the circuit court erred when it found that Winnebago County established by clear and convincing evidence that Christopher was incompetent to refuse psychotropic medication and treatment.

¶8 As to the first issue, we hold that Wis. Stat. § 51.20(1)(ar) is facially constitutional because it is reasonably related to the State's legitimate interest in providing care and assistance to inmates suffering from mental illness. As to the second issue, we affirm the circuit court because it did not err when it found by clear and convincing evidence that Christopher was incompetent to refuse psychotropic medication and treatment.

---

[7] Christopher has filed a motion to strike a portion of Winnebago County's response brief that argues, "Wis. Stat. § 51.20(1)(ar) is not unconstitutional as applied to Christopher S." Christopher did not raise an as applied challenge in the court of appeals, nor did he raise an as applied challenge before this court. At oral argument, both parties agreed that the motion to strike should be granted. We grant the motion to strike and, therefore, will not consider an as applied challenge against Wis. Stat. § 51.20(1)(ar).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶9 At all times relevant to these proceedings, Christopher was an inmate of the Wisconsin state prison system. In 2005, Christopher was convicted of mayhem as a repeater, in violation of Wis. Stat. § 940.21 (2001-02).[8] As a result of his conviction, Christopher was sentenced to twenty years of confinement, consisting of ten years of incarceration followed by ten years of extended supervision.

¶10 In 2012, Fox Lake Correctional Institution received a complaint from Christopher that his cellmate sexually assaulted him. Subsequent to his complaint, Fox Lake Correctional Institution transferred Christopher to the WRC in Winnebago County.

¶11 Dr. Michlowski, medical director for the WRC, spoke with Christopher soon after he was admitted. Dr. Michlowski outlined his conversation with Christopher in a letter to Mr. Bartow, director of the WRC. In the letter, Dr. Michlowski wrote, "[Christopher] understood that he was being referred to the WRC because he is 'being commissioned' by the 'military command to produce castings,' for 'engineering purposes.'" Subsequent interactions between Christopher and WRC personnel revealed that Christopher believed he was "programmed by

---

[8] The mayhem statute, Wis. Stat. § 940.21 (2001-02) states, "Whoever, with intent to disable or disfigure another, cuts or mutilates the tongue, eye, ear, nose, lip, limb, or other bodily member of another, is guilty of a Class B felony."

'Special Operations,'" and he "insisted that there [were] chips in his hands and shoulder." Eventually, doctors x-rayed Christopher's hand in an effort to convince Christopher of his need for psychotropic medication.[9] The x-ray came back normal, but Christopher disregarded it because "the x-ray can't penetrate Beryllium."

¶12  In his letter, Dr. Michlowski also informed Mr. Bartow of an incident that occurred on September 16, 2012. On that day, an officer at the WRC ordered Christopher to eat in the dayroom. Christopher refused that order and began to "posture and loudly indicate that the officer giving him the order had raped [Christopher] while [Christopher] was in the military." Dr. Michlowski requested via his letter that "[the County] petition the court to find that [Christopher] is suffering from a major mental illness (presently psychotic)." In that same letter, Dr. Michlowski mentioned that Christopher was seeing Dr. Keshena but that Christopher "made it clear to [Dr. Keshena] that he does not believe he has any psychotic problems." Finally, Dr. Michlowski opined that "[Christopher] is clearly delusional at this time and although he did consider taking medication several weeks ago, his illness at this time is clearly precluding him from acting in his own best interest."

---

[9] Christopher had previously told Dr. Michlowski that "if the x-ray turned out to be normal that he would be more inclined to accept a trial of medication."

¶13 On November 2, 2012, Dr. Maria Murgia de Moore conducted a two-hour clinical interview with Christopher. She did so at the request of the WRC. Based on this interview, a review of the WRC's records, and discussions with WRC staff, Dr. Murgia de Moore concluded that Christopher "suffers from a major mental illness (Psychotic Disorder, Not Otherwise Specified) that is characterized by disorganized speech, disorganized thinking, delusions, and poor judgment." Finally, Dr. Murgia de Moore recommended that Christopher be committed and further recommended that he be treated with appropriate psychotropic medications.

¶14 Later that November, Winnebago County filed a petition for the involuntary commitment of Christopher pursuant to Wis. Stat. § 51.20(1)(ar) as well as a petition for the involuntary administration of psychotropic medication and treatment to Christopher pursuant to Wis. Stat. § 51.61(1)(g)4.b. Following a probable cause hearing, the court ordered Drs. J.R. Musunuru and Yogesh Pareek to examine Christopher for the purpose of determining his mental condition.

¶15 Dr. Musunuru conducted a one-hour interview with Christopher and also reviewed his medical records from the WRC. In his letter to the court, Dr. Musunuru described Christopher as "mildly anxious," "irritable," "distractib[le]," "extremely paranoid," "preoccupied with persecution, mistrust, and [the idea that] someone is going to hurt him," and "vague about his hallucinations." In that same letter, Dr. Musunuru diagnosed Christopher with "Schizophrenia Paranoid type," which is "a

10

substantial disorder of thought, mood, perception, which grossly impairs judgment, behavior, capacity to recognize reality, or the ability to meet the ordinary demands of life." Based on this diagnosis, Dr. Musunuru recommended psychotropic medication and noted that "the advantages and disadvantages and the alternatives to accepting particular medications [were] explained to the subject in detail[]." However, Dr. Musunuru also found that "the subject holds patently false beliefs about the treatment recommended medications, which prevent an understanding of the legitimate risk and benefits. They are denial of illness and trust in his delusions." As a result, Dr. Musunuru concluded that "due to the subject's mental illness, the subject is substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to make an informed choice as to accept or refuse medications."

¶16 Similarly to Dr. Musunuru, Dr. Pareek conducted a one-hour interview with Christopher and also reviewed Christopher's medical records from the WRC. In a letter to the circuit court, Dr. Pareek diagnosed Christopher with "Schizophrenia chronic paranoid type" and noted that "[Christopher] has no insight into his mental illness and he does not accept that he needs to be treated." Finally, Dr. Pareek recommended that Christopher be committed and medicated.

¶17 On December 21, 2012, a jury trial was held for the purpose of determining whether Christopher should be

involuntarily committed under Wis. Stat. § 51.20(1)(ar).[10] Christopher was present for trial, but he did not testify. Winnebago County called two witnesses, Drs. Keshena and Musunuru.

¶18 Dr. Keshena testified that she had reviewed Christopher's medical records, observed him, and conducted a mental-status evaluation on him. Based on this, she diagnosed Christopher with "psychosis" and noted that Christopher's psychosis "grossly" impairs "his capacity to recognize reality." Additionally, Dr. Keshena testified that she believed that Christopher was a proper subject for treatment and that his type of illness responded well to treatment. She further testified that she had attempted less restrictive forms of treatment with Christopher, but those forms were unsuccessful.[11] Finally, Dr. Keshena testified that she had fully informed Christopher about his treatment needs, the availability of mental health services, his rights, and his ability to discuss this information with her.

¶19 Dr. Musunuru testified that he reviewed Christopher's records and conducted an interview with Christopher. Based on

[10] The sole issue for the jury was whether the County proved the requirements outlined in Wis. Stat. § 51.20(1)(ar).

[11] The petition stated, "appropriate less restrictive forms of treatment were attempted with the subject inmate and were unsuccessful, including: voluntary treatment with psychotropic med[ication]s and voluntary transfer to special unit within the institution for spec[ial] care of mental illness."

this, he concluded that Christopher "suffers from a major mental illness" called "schizophrenia paranoid type." Dr. Musunuru further testified that Christopher's illness substantially impairs his "judgment, behavior, capacity to recognize reality, and also, [his] ability to meet [the] ordinary demands of life." Like Dr. Keshena, Dr. Musunuru testified that Christopher was a proper subject for treatment.

¶20 While the jury was deliberating, the circuit court conducted a bench trial for the purpose of determining whether to grant the County's petition for the involuntary administration of psychotropic medication and treatment pursuant to Wis. Stat. § 51.61(1)(g)4.b.[12] The County called Dr. Keshena as a witness. Dr. Keshena testified that she had an opportunity to explain to Christopher the advantages, disadvantages, and alternatives to medication. Further, she testified that Christopher was substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to his mental illness in order to make an informed choice as to whether to refuse psychotropic medications. Finally, on cross-examination, she explained that Christopher was previously on lithium and that Christopher told her he did not have side

---

[12] Unlike the inmate commitment statute, the involuntary medication or treatment statute does not contain a right to a jury trial. Wisconsin Stat. § 51.61(1)(g)3., outlines the involuntary medication or treatment hearing requirements: "The hearing under this subdivision shall meet the requirements of s. 51.20(5), except for the right to a jury trial." (Emphasis added.)

13

effects from the lithium but that he also believed it was a placebo.

¶21  That same day, the jury reached a verdict. The jury made five findings: (1) Christopher was mentally ill, (2) Christopher was a proper subject for treatment and in need of treatment, (3) Christopher was an inmate of the Wisconsin state prison system, (4) appropriate less restrictive forms of treatment were attempted with Christopher but were unsuccessful, and (5) Christopher was fully informed of his treatment needs, the mental health services available to him, his rights, and Christopher had an opportunity to discuss his needs, the services available, and his rights with a licensed physician.[13] In accordance with the jury's findings, the circuit court granted the County's petition for involuntary commitment for six months.[14] The court ordered Christopher committed to the WRC.

---

[13] The jury's findings tracked the requirements outlined in Wis. Stat. § 51.20(1)(ar).

[14] The court's role at the end of the jury trial includes the following:

> [A]t the conclusion of the proceedings, <u>the court shall . . . [i]f the individual is an inmate of a state prison and the allegations under sub. (1)(a) or (ar) are proven, order commitment</u> to the department and either authorize the transfer of the inmate to a state treatment facility or if inpatient care is not needed authorize treatment on an outpatient basis in the prison . . . .

Wisconsin Stat. § 51.20(13)(a)(4) (emphasis added).

¶22 The court also granted the County's petition for the involuntary administration of psychotropic medication and treatment, concluding that "[Christopher] does not have an understanding of the advantages and disadvantages of the medication." The court added, "I find that the medication has a therapeutic value and would not hinder his ability to participate in future legal proceedings, and therefore, issue a medication order." According to the court's written order, Christopher was incompetent to refuse psychotropic medication and treatment because he "is substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to [his] condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." Both the commitment order and the medication order were subsequently extended after the original orders expired.

¶23 Christopher's attorney filed a postcommitment motion challenging the court's order for the involuntary commitment of Christopher and order for the involuntary administration of psychotropic medication and treatment to Christopher. The circuit court denied postcommitment relief; it concluded that Christopher's motion was moot because he appealed only the original commitment and medication orders, which had already expired. The circuit court did not address the merits of Christopher's argument that Wis. Stat. § 51.20(1)(ar) violated the constitution. Christopher appealed, and the court of appeals certified the case to this court. We accepted certification.

15

## II. DISCUSSION

¶24 We first discuss whether Wis. Stat. § 51.20(1)(ar) violates an inmate's substantive due process rights and is, therefore, facially unconstitutional. We hold that Wis. Stat. § 51.20(1)(ar) is facially constitutional because it is reasonably related to the State's legitimate interest in providing care and assistance to inmates suffering from mental illness. We then consider whether the circuit court erred when it found that Winnebago County established by clear and convincing evidence that Christopher was incompetent to refuse psychotropic medication. We hold that the circuit court did not err because the medical expert's undisputed testimony sufficiently addressed and met the requirements outlined in Wis. Stat. § 51.61(1)(g)4.b.

### A. THE RELEVANT STATUTES

¶25 Because it is important to understand the commitment and treatment process, we take a moment to outline the way the relevant statutes work.

¶26 A county may petition for the involuntary commitment of an individual under Wis. Stat. § 51.20(1). Wisconsin Stat. § 51.20 is titled "involuntary commitment for treatment." It governs how and when the State may seek the involuntary commitment of a person, except when that person is an inmate of the Wisconsin state prison system. Wisconsin Stat. § 51.20(1)

16

carves out a special subsection, subsection (1)(ar), which governs the involuntary commitment of inmates of the Wisconsin state prison system. To commit someone under Wis. Stat. § 51.20(1), a court must conclude that the person is (1) mentally ill, developmentally disabled, or drug dependent; (2) a proper subject for treatment; and (3) dangerous.[15]

¶27 In contrast, to commit an inmate under Wis. Stat. § 51.20(1)(ar), a county must show that (1) the individual is an inmate of the Wisconsin state prison system; (2) the inmate is mentally ill; (3) the inmate is a proper subject for treatment and is in need of treatment; (4) appropriate less restrictive forms of treatment were attempted with the inmate, and they were unsuccessful; (5) the inmate was fully informed about his treatment needs, the mental health services available, and his rights; and (6) the inmate had an opportunity to discuss his treatment needs, the services available, and his rights with a

---

[15] Wisconsin Stat. § 51.20(1) contains the following requirements:

> (1) Petition for examination. (a) Except as provided in pars. (ab), (am), and (ar), every written petition for examination shall allege that all of the following apply to the subject individual to be examined:
>
> 1. The individual is mentally ill or, except as provided under subd. 2. e., drug dependent or developmentally disabled and is a proper subject for treatment.
>
> 2. The individual is[, because he or she does any of the following,] dangerous . . . .

psychologist or a licensed physician.[16] Both Wis. Stat. § 51.20(1) and Wis. Stat. § 51.20(1)(ar) are treatment focused; these statutes emphasize that a person is being committed because he or she has a mental illness and needs treatment to help that illness.

¶28 However, Wis. Stat. § 51.61, titled "patient rights," states that an individual has "the right to refuse all medication and treatment." Wis. Stat. § 51.61(1)(g)(1). If an individual invokes his or her right, then the County can petition for the <u>involuntary</u> administration of medication or treatment to an individual pursuant to Wis. Stat. § 51.61(1)(g). Wisconsin Stat. § 51.61(1)(g) does not carve out a special subsection for inmates, so the requirements to prove incompetency to refuse medication and treatment are the same for everyone (inmates and non-inmates alike). To prove incompetency, the County must show that "because of mental illness, developmental disability, alcoholism or drug dependence, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment [were] explained to the individual," the individual is either (1) "incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the

---

[16] Unlike Wis. Stat. § 51.20(1), which requires a finding of dangerousness, Wis. Stat. § 51.20(1)(ar) does not require such a finding. According to Christopher, it is this absence of a required finding of dangerousness that renders Wis. Stat. § 51.20(1)(ar) facially unconstitutional.

alternatives," or (2) "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment." Wis. Stat. § 51.61(1)(g)4.a., b.

¶29  To summarize, an inmate can be involuntarily committed under Wis. Stat. § 51.20(1)(ar) only when the State satisfies a hefty set of requirements. Moreover, an inmate is committed so he or she can receive treatment for his or her mental illness. But, if the inmate invokes his or her right to refuse treatment, then the State will need to petition for the <u>involuntary</u> administration of medication or treatment to that inmate.

## B. MOOTNESS

### 1. This Case Is Moot, But We Will Address The Issues Because They Are Of Great Public Importance And Are Likely To Evade Review.

¶30 Before we review the merits of Christopher's constitutional challenge, we first address whether this case is moot. At the postcommitment motion hearing, Winnebago County argued that this case was moot because Christopher's original commitment order had already expired prior to the filing of his motion for postcommitment relief. The circuit court agreed. We agree with the circuit court's conclusion that this case is moot; however, we take up Christopher's claims because they

19

qualify for review under two of the four exceptions to the general rule barring consideration of moot claims.

¶31 An issue is moot "when a determination is sought upon some matter which, when rendered, cannot have any practical legal effect upon a then existing controversy." In re Sheila W., 2013 WI 63, ¶4, 348 Wis. 2d 674, 835 N.W.2d 148 (per curiam). We have stated that there is an "apparent lack of a live controversy" when an appellant appeals an order to which he or she is no longer subjected. In re Mental Commitment of Aaron J.J., 2005 WI 162, ¶3, 286 Wis. 2d 376, 706 N.W.2d 659 (per curiam) (noting that the case implicated a potential issue of mootness because Aaron was no longer subject to a commitment order, but dismissing the case as improvidently granted due to inadequate development of the legal arguments); see Sheila W., 348 Wis. 2d 674, ¶4 ("In this case, no determination of this court will have any practical legal effect upon an existing controversy because the order being appealed has expired."). In Christopher's case, the issues are moot because he is no longer subject to the orders being appealed.

¶32 Nevertheless, we may decide an otherwise moot issue if it

> (1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.

20

Melanie L., 349 Wis. 2d 148, ¶80 (citing State v. Morford, 2004 WI 5, ¶7, 268 Wis. 2d 300, 674 N.W.2d 349). We conclude that the issues presented are of great public importance as they would affect a large number of persons in the Wisconsin State prison system.[17] Moreover, we conclude that the issues are likely to evade appellate review "in many instances because the order[s] appealed from will have expired before an appeal is completed." Id. We therefore consider the issues Christopher asks us to review.

C. WHETHER WIS. STAT. § 51.20(1)(ar) IS FACIALLY CONSTITUTIONAL.

### 1. Standard Of Review

¶33  "The constitutionality of a statute is a question of law that we review de novo." State v. Wood, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63 (citing State v. Hansford, 219 Wis. 2d 226, 234, 580 N.W.2d 171 (1998)). "Further, we review a statute under the presumption that it is constitutional." Id. "Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of

---

[17] For example, in June 2008, Wisconsin housed 22,451 inmates. Dep't of Corrs. & Dep't of Health Servs., An Evaluation: Inmate Mental Health Care 26 (2009), legis.wisconsin.gov/lab/reports/09-4Full.pdf. Of those inmates, 6,957 were suffering from mental illness. Id. That is nearly one-third of the inmate population. Id.

21

constitutionality." In re Commitment of Dennis H., 2002 WI 104, ¶12, 255 Wis. 2d 359, 647 N.W.2d 851 (internal quotation marks omitted) (quoting State v. Carpenter, 197 Wis. 2d 252, 263-64, 541 N.W.2d 105 (1995)). "To overcome that presumption, a party challenging a statute's constitutionality bears a heavy burden" because "it is insufficient for the party challenging the statute to merely establish that the statute's constitutionality is doubtful or that the statute is probably unconstitutional"; rather, "the party challenging a statute's constitutionality must 'prove that the statute is unconstitutional beyond a reasonable doubt.'" State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90 (quoting State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328). "[I]n the context of a challenge to the constitutionality of a statute, the phrase 'beyond a reasonable doubt' expresses the 'force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional before the statute or its application can be set aside.'" League of Women Voters of Wisconsin Educ. Network, Inc. v. Walker, 2014 WI 97, ¶17, 357 Wis. 2d 360, 851 N.W.2d 302 (quoting Dane Cnty. Dep't of Human Servs. v. Ponn P., 2005 WI 32, ¶16, 279 Wis. 2d 169, 694 N.W.2d 344). In short, Christopher "bears a heavy burden" because he must prove that Wis. Stat. § 51.20(1)(ar) is unconstitutional beyond a reasonable doubt.

## 2. Facial Challenge Requirements

¶34 A party may challenge a law or government action as being unconstitutional by bringing a facial challenge. Wood, 323 Wis. 2d 321, ¶13. A facial challenge to a statute is an "uphill endeavor." Dennis H., 255 Wis. 2d 359 ¶5. Under a facial challenge, "the challenger must show that the law cannot be enforced 'under any circumstances.'" Wood, 323 Wis. 2d 321, ¶13 (quoting Olson v. Town of Cottage Grove, 2008 WI 51, ¶44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211). "If a challenger succeeds in a facial attack on a law, the law is void 'from its beginning to the end.'" Id. (quoting State ex rel. Comm'rs of Pub. Lands v. Anderson, 56 Wis. 2d 666, 672, 203 N.W.2d 84 (1973)). Here, Christopher claims that Wis. Stat. § 51.20(1)(ar) is facially unconstitutional because it violates an inmate's substantive due process rights by allowing for the involuntary commitment of an inmate without first finding the inmate dangerous. Christopher faces an "uphill battle" because to succeed on his claim he must show that Wis. Stat. § 51.20(1)(ar) is unconstitutional under all circumstances.

## 3. Constitutional Overview Of Substantive Due Process Rights

¶35 "The Due Process Clauses of the United States and Wisconsin Constitutions protect both substantive and procedural due process rights." State v. Luedtke, 2015 WI 42, ¶74, 362 Wis. 2d 1, 863 N.W.2d 592 (internal quotation marks omitted) (quoting State ex rel. Greer v. Wiedenhoeft, 2014 WI 19, ¶55, 353 Wis. 2d 307, 845 N.W.2d 373, reconsideration denied sub nom., Greer v. Wiedenhoeft, 2014 WI 50, 354 Wis. 2d 866, 848

23

N.W.2d 861). Specifically, these rights are "rooted in the Fourteenth Amendment to the Constitution, and Article I, Section 1 of the Wisconsin Constitution."[18] Wood, 323 Wis. 2d 321, ¶17. Substantive due process rights "protect against state action that is arbitrary, wrong, or oppressive," id., by "forbid[ding] a government from exercising power without any reasonable justification in the service of a legitimate governmental objective," Luedtke, 362 Wis. 2d 1, ¶74 (internal quotation marks omitted) (quoting State v. Radke, 2003 WI 7, ¶12, 259 Wis. 2d 13, 657 N.W.2d 66).

### 4. Rational Basis Review Applies.

¶36 We begin our analysis, as we must, by determining the appropriate level of scrutiny to apply to Wis. Stat. § 51.20(1)(ar), the inmate commitment statute. "If the challenged legislation neither implicates a fundamental right nor discriminates against a suspect class, we apply rational basis review rather than strict scrutiny to the legislation." In re Commitment of Alger, 2015 WI 3, ¶39, 360 Wis. 2d 193, 858 N.W.2d 346. A law subject to rational basis review will be upheld "unless it is patently arbitrary and bears no rational relationship to a legitimate government interest." Id. (internal

---

[18] In general, the United States Constitution and the Wisconsin Constitution provide substantively similar due process guarantees. State v. Wood, 2010 WI 17, ¶17 n.9, 323 Wis. 2d 321, 780 N.W.2d 63. Compare U.S. Const. Amend. XIV, with Wis. Const. Art. I, § 1. "Accordingly, we do not distinguish between those constitutional protections in this case." Id.

quotation marks omitted) (quoting Smith, 323 Wis. 2d 377, ¶12). Moreover, "[a] legislative classification satisfies rational basis review if 'any conceivable state of facts . . . could provide a rational basis for the classification.'" Alger, 360 Wis. 2d 193, ¶50 (alteration in original) (emphasis added) (quoting State v. Mary F.-R., 2013 WI 92, ¶52, 351 Wis. 2d 273, 839 N.W.2d 851). In contrast, "[a] law subject to strict scrutiny will be upheld 'only if narrowly tailored to serve a compelling state interest.'" Id. (quoting Mary F.-R., 351 Wis. 2d 273, ¶35). Christopher does not argue that Wis. Stat. § 51.20(1)(ar) discriminates against a suspect class; therefore, we will examine only whether Wis. Stat. § 51.20(1)(ar) implicates a fundamental right.

¶37 "[F]or the ordinary citizen, commitment to a mental hospital produces 'a massive curtailment of liberty,' and in consequence 'requires due process protection.'" Vitek v. Jones, 445 U.S. 480, 491 (1980) (citation omitted) (first quoting Humphrey v. Cady, 405 U.S. 504, 509 (1972); then quoting Addington v. Texas, 441 U.S. 418, 425 (1979)); Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (noting that the due process clause contains a substantive component that includes a right to freedom from restraint)). This is because "[f]reedom from physical restraint is a fundamental right that 'has always been at the core of the liberty protected by the Due Process Clause

25

from arbitrary governmental action.'"[19] <u>State v. Post</u>, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995) (quoting <u>Foucha</u>, 504 U.S. at 80).

¶38 For example, in <u>State v. Post</u>, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), we applied strict scrutiny to a substantive due process challenge to Chapter 980, Wisconsin's sexually violent person commitment statute. 197 Wis. 2d at 302. We did so because the statute implicated a fundamental right, the right to be free from physical restraint. <u>Id.</u> But <u>Post</u> is distinguishable from Christopher's case. Chapter 980 allows the State to petition for the commitment of a sexually violent person.[20] If the petition is granted, and all of the necessary procedures are met, a sexually violent person can be committed when his or her sentence expires. Thus, under Chapter 980, a person is subject to commitment <u>following</u> the expiration of his or her criminal sentence. In contrast, Wis. Stat. § 51.20(1)(ar) applies only <u>while</u> the individual is serving his or her sentence.

---

[19] The due process "liberty" right is called many different things: freedom from physical restraint, freedom from bodily restraint, freedom from confinement, and the right to be at liberty.

[20] For a brief overview of Chapter 980, see <u>In re Commitment of Gilbert</u>, 2012 WI 72, ¶¶21, 23, 342 Wis. 2d 82, 816 N.W.2d 215 ("[C]h. 980 provides for the involuntary commitment of certain individuals who are found to be sexually violent persons. As such, ch. 980 prescribes a detailed procedure that the State must follow in order to commit a sexually violent person." (citation omitted)).

¶39 This distinction is important because "a valid criminal conviction and a prison sentence extinguish a defendant's right to freedom from confinement." Vitek, 445 U.S. at 493 (citing Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1980) ("But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.'" (quoting Meachum v. Fano, 427 U.S. 215, 224 (1976) ("But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system . . . .")))); see also Johnson v. California, 543 U.S. 499, 510 (2005) ("This is because certain privileges and rights must necessarily be limited in the prison context."); In re Commitment of West, 2011 WI 83, ¶85, 336 Wis. 2d 578, 800 N.W.2d 929 (holding that a liberty interest in freedom from confinement is not absolute). "Such a conviction and sentence sufficiently extinguish a defendant's liberty 'to empower the State to confine him in any of its prisons.'"[21] Vitek, 445 U.S. at 493 (quoting Meachum, 427

---

[21] Christopher cites a litany of cases to support his argument that a state must prove that an inmate is dangerous before he or she can be involuntarily committed. All are distinguishable. O'Connor v. Donaldson, 422 U.S. 563 (1975), and Addington v. Texas, 441 U.S. 418 (1979), addressed the involuntary commitment of individuals who were not currently serving sentences. The individuals committed in Addington and O'Connor were not inmates. Jones v. United States, 463 U.S. 354 (1983), and Foucha v. Louisiana, 504 U.S. 71 (1992), concerned the involuntary commitment of individuals who were acquitted of

(continued)

27

U.S. at 224). To be clear, we are not suggesting that an inmate loses all, or even most, of his or her constitutional rights while he or she is serving his or her sentence. Rather, a prison inmate "retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Turner v. Safley, 482 U.S. 78, 95 (1987) (alteration in original) (internal quotation marks omitted) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)).

¶40 For example, in Washington v. Harper, 494 U.S. 210 (1990), the Supreme Court of the United States addressed the constitutionality of administering antipsychotic medications to a prisoner against his will. 494 U.S. at 213. There, the Court noted that the "respondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs," id. at 221, but went on to clarify that "[t]he extent of a prisoner's rights under the Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement," id. at 222 (emphasis added). Thus, while an inmate does not lose all of his

---

a crime by reason of insanity. Again, the individuals committed in Jones and Foucha were not inmates. For that reason, these cases arguably require a finding of dangerousness when the State seeks to commit an individual who is not an inmate (just as Wis. Stat. § 51.20(1) requires a finding of dangerousness when the State seeks to commit an individual who is not an inmate). But these cases do not stand for the principle that a state must prove dangerousness when the State seeks to commit an inmate.

or her rights, his or her rights must be viewed in light of his or her "status as an inmate" and "the legitimate penological objectives of the corrections system." Turner, 482 U.S. at 95.

¶41 As a result, the Court in Harper concluded that "[t]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to a legitimate penological interest.'"[22] Id. at 223 (quoting Turner, 482 U.S. at 89 ("If [other Supreme Court cases] have not already resolved the question posed . . . , we resolve it now: when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest.")). "This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have

---

[22] We realize that Washington v. Harper, 494 U.S. 210 (1990) and Turner v. Safley, 482 U.S. 78 (1986) dealt with prison regulations and we deal here with a statute. Despite this difference, we find both cases persuasive. The Turner Court stated,

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

482 U.S. at 84-85 (emphasis added).

29

been required to satisfy a more rigorous standard of review." Id. A reasonableness standard is appropriate because it balances the principle that "inmates retain at least some constitutional rights despite incarceration with the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration." Id. at 223-24.

¶42 Like the Supreme Court, we assess the extent of an inmate's rights in the context of the inmate's confinement. We recognize that "[c]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Post, 197 Wis. 2d at 302 (alteration in original) (internal quotation marks omitted) (quoting Addington, 441 U.S. at 425). However, when we look at an inmate's liberty right in the context of his or her confinement, we conclude that his or her specific right to freedom from physical restraint is already curbed because he or she is incarcerated.[23] Indeed, the very

_____

[23] We recognize that Christopher has an interest in avoiding the "adverse social consequences" associated with mental health commitments: "It is indisputable that commitment to a mental hospital 'can engender adverse social consequences to the individual' and that '[w]hether we label this phenomena 'stigma' or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual.'" Vitek, 445 U.S. at 492 (alterations in original) (quoting Addington, 441 U.S. at 425-26).

(continued)

30

nature of incarceration encompasses physical restraint. Because inmates have a qualified right to freedom from physical restraint and because Wis. Stat. § 51.20(1)(ar) applies only to inmates, we hold that rational basis review applies to Wis. Stat. § 51.20(1)(ar).[24]

### 5. We Determine That Wis. Stat. § 51.20(1)(ar) Is Facially Constitutional Because It Is Reasonably Related To A Legitimate State Interest.

¶43 We turn to the task of determining whether Wis. Stat. § 51.20(1)(ar) is reasonably related to a legitimate state interest.

¶44 The State has more than a well-established and legitimate interest; it has a "compelling" interest in providing

---

In addition, Christopher argues that inmates have an interest in "avoiding the unwanted administration of antipsychotic drugs" against their will. While this is certainly true, it is not relevant to the present case. Again, Christopher is challenging only the constitutionality of the involuntary commitment statute under Wis. Stat. § 51.20(1)(ar), not the involuntary medication statute under Wis. Stat. § 51.61(1)(g). Thus, any interest that an inmate, including Christopher, has in avoiding unwanted medication is not relevant to the question of whether an inmate's involuntary commitment is unconstitutional.

[24] Christopher contends that we should adopt intermediate scrutiny because both an involuntary commitment order and an involuntary medication order are at issue in this case. However, Christopher is challenging only the constitutionality of the involuntary commitment statute under Wis. Stat. § 51.20(1)(ar); he is not challenging the constitutionality of the involuntary medication or treatment statute under Wis. Stat. § 51.61(1)(g). As such, this case does not provide an occasion for us to apply any level of scrutiny to the involuntary medication or treatment statute.

care and assistance to those who suffer from a mental disorder. Post, 197 Wis. 2d at 303 ("We find the state's dual interests represented by chapter 980 to be both legitimate and compelling.");[25] see also Dennis H., 255 Wis. 2d at 369 ("The state has a well-established, legitimate interest under its parens patriae power in providing care to persons unable to care for themselves . . . ."); Vitek, 445 U.S. at 495 ("Concededly the interest of the State in segregating and treating mentally ill patients is strong."); O'Connor v. Donaldson, 422 U.S. 563, 575 (1975) ("That the State has a proper interest in providing care and assistance to the unfortunate goes without saying.").

¶45 The State's interest in caring for and assisting individuals who suffer from mental illness is particularly strong in the context of a prison because "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle v. Gamble, 429 U.S. 97, 103 (1976). Moreover, the State's interest in caring for and assisting its inmates is not just an

---

[25] In State v. Post, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), the State's dual interests were (1) protecting the community from the dangerously mentally disordered and (2) providing care and treatment to those with mental disorders that predispose them to sexual violence. 197 Wis. 2d at 302. We went on to say, "The Supreme Court has recognized both of these interests as legitimate, the first under the state's police power and the latter under its parens patriae power." Id. (citing Addington, 441 U.S. at 426). Under the parens patriae power, the state has a legitimate interest in "providing care to its citizens who are unable because of emotional disorders to care for themselves . . . ." Addington, 441 U.S. at 426.

32

interest; it is an obligation: "We confront here the State's obligations, not just its interests. The State has undertaken the obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution." Harper, 494 U.S. at 225 (emphasis added). Thus, the State needs to properly care for inmates suffering from mental illness while they are in the custody of the State.

¶46 At oral argument, Winnebago County stated that "first and foremost" the State has an interest in making sure its inmates suffering from mental illness are "taken care of." Here, the County has a legitimate interest in providing care and assistance to inmates suffering from mental illness. Further, in this case, caring for and assisting these inmates is more than an interest; it is an obligation because as a result of his or her incarceration, the inmate cannot obtain treatment on his or her own. The State needs to provide it. Wisconsin Stat. §51.20(1)(ar) is reasonably related to the State's interest because it enables the State to fulfill its interest in

33

providing care and assistance to those inmates who need treatment because they are suffering from a mental illness.[26]

¶47 To prevail on his constitutional challenge, Christopher needed to prove that Wis. Stat. § 51.20(1)(ar) is

---

[26] Christopher argues that Harper, requires the State to prove dangerousness whenever it seeks to commit an inmate. In Harper, the Supreme Court of the United States took up a due process challenge to Policy 600.30, which allowed the State of Washington to involuntarily administer antipsychotic medication to an inmate against the inmate's will only if he or she (1) suffered from a mental disorder and was (2) gravely disabled or posed a serious likelihood of harm to himself, others, or their property. 494 U.S. at 215 (emphasis added). To analyze the inmate's claim, the Court considered both the inmate's "significant interest in avoiding the unwanted administration of antipsychotic drugs" and the State's interest in the safety and security of its institution. Id. at 221, 225-26. There, the Court required a finding of dangerousness because it resulted in an "accommodation between an inmate's liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interest in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others." Id. at 236 (emphasis added).

Christopher's reliance on Harper is misguided for two reasons. First, Harper is concerned with the administration of antipsychotic medications, not the involuntary commitment of an inmate. Second, Christopher ignores the fact that the legitimate interest in Harper was the safety and security of the prison, not the care and assistance of its mentally ill inmates. Harper may require a finding of dangerousness when the State seeks to involuntarily medicate an inmate and is solely relying on the safety and security of the prison as its legitimate reason for administering the antipsychotic medication. But Harper does not address the issue of how a state may proceed vis-à-vis the involuntary commitment of an inmate, nor does it address the issue of how a state may proceed vis-à-vis the involuntary administration of antipsychotic medication when the State's interest is unrelated to the safety and security of the institution.

unconstitutional under all circumstances. He also needed to prove that Wis. Stat. § 51.20(1)(ar) is unconstitutional beyond a reasonable doubt. Christopher has proved neither. Because we can think of at least one "conceivable set of facts" where Wis. Stat. § 51.20(1)(ar) is constitutional, namely where the State's interest is in caring for and assisting inmates who suffer from mental illness, Christopher has failed to prove that the statute is unconstitutional under all circumstances. Accordingly, we hold that Wis. Stat. § 51.20(1)(ar) is facially constitutional.

## D. WHETHER THE CIRCUIT COURT ERRED.

¶48  We now turn to the issue of whether the circuit court erred when it concluded that Winnebago County established by clear and convincing evidence that Christopher was incompetent to refuse psychotropic medication and treatment pursuant to Wis. Stat. § 51.61(1)(g). Here, we are not assessing the constitutionality of Wis. Stat. § 51.61(1)(g). Christopher does not raise a constitutional challenge against Wis. Stat. § 51.61(1)(g). Rather, we examine whether the circuit court erred when it concluded that the County met its burden of proof. We turn to the merits of Christopher's argument.

### 1. Standard Of Review

¶49 Christopher argues that Winnebago County failed to meet its burden of proving that he was incompetent to refuse

psychotropic medication and treatment as required by Wis. Stat. § 51.61(1)(g)4.b.[27] Pursuant to that statute, it is the County that "bears the burden of proving [Christopher] incompetent to refuse medication by clear and convincing evidence." Melanie L., 349 Wis. 2d 148, ¶37 (citing Wis. Stat. § 51.20(13)(e) (2009-2010)).

¶50 "We will not disturb a circuit court's factual findings unless they are clearly erroneous." Id., ¶38. Further, "we accept reasonable inferences from the facts available to the circuit court." Id. When "evaluating whether the County met its burden of proof, a court must apply the facts to the statutory standard in Wis. Stat. § 51.61(1)(g)4.b. and interpret the statute." Id., ¶39. Finally, "applying facts to the standard and interpreting the statute are questions of law that this court reviews independently." Id. In short, the circuit court's findings of fact are reviewed for clear error, but application of those facts to the statute and interpretation of the statute are reviewed independently.

2. We Determine That The Circuit Court Did Not Err When It

Concluded That Winnebago County Established By Clear And

---

[27] In this case, the County sought to prove incompetency under Wis. Stat. § 51.61(1)(6)4.b., which required the County to prove that the "advantages and disadvantages of and alternatives to accepting the particular medication or treatment [were] explained to the [Christopher]" and that Christopher was "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to [his] [mental illness] in order to make an informed choice as to whether to accept or refuse medication."

Convincing Evidence That Christopher Was Incompetent To Refuse Psychotropic Medication And Treatment.

¶51 This case once again requires us to interpret Wis. Stat. § 51.61(1)(g)4. Our decision in Melanie L. is most instructive; thus, a brief recitation of the facts and the holding is appropriate.

¶52 As is the case here, the issue in Melanie L. was whether the County proved by clear and convincing evidence that the individual was incompetent to refuse psychotropic medication under Wis. Stat. § 51.61(1)(g)4. There, we held that the County failed to meet its burden of proof:

> In particular, the medical expert's terminology and recitation of facts did not sufficiently address and meet the statutory standard. Medical experts must apply the standards set out in the competency statute. An expert's use of different language to explain his or her conclusions should be linked back to the standards in the statute.

Melanie L., 349 Wis. 2d 148, ¶¶8-9, 97. In that case, Melanie L.'s doctor (Dr. Dave) diagnosed her with "Psychotic Disorder, NOS, a substantial disorder of thoughts and perception, which grossly impairs her judgment, capacity to recognize reality, [and] ability to care for herself." Id., ¶27 (alteration in original) (internal quotation marks omitted). His report stated:

> Melanie, based upon her educational background, was able to express the benefits and risks of the psychotropic medication; however, she is unable to apply such understanding to her advantage and she is considered to be not competent to refuse psychotropic medication. . . . The patient would not comply with

psychotropic  medication  without  [an]  involuntary medication order from the court.

Id. (alterations  in  original)  (internal  quotation  marks omitted).  Further,  at  trial  the  doctor  testified,  "I  do  not think  that  she's  capable of applying the benefits of the medication to her advantage." Id., ¶30 (emphasis added).

¶53  We  summarized  the  testimony  of  Melanie  L.'s  doctor  as concluding  that  "Melanie  was  incapable  of  applying  an understanding  of  the  medication  'to  her  advantage.'"  See id., ¶91.  We  took  issue  with  the  doctor's  testimony  and specifically noted the following:

> The corporation counsel posed a question to Dr. Dave employing the statutory terms. When he did not receive an answer in those terms, he should have required his witness to expound upon his answer, so that the circuit court and a reviewing court did not have to speculate upon Dr. Dave's meaning. As the record stands, we cannot be certain whether Dr. Dave was applying the standard or changing the standard.

Id. In short, the County needed to "more carefully articulate[] its case." Id., ¶95.

¶54  The  present  case  is  distinguishable  from  Melanie  L. because,  here,  the  County  carefully  articulated  its  case  by adhering  strictly  to  the  standards  set  out  in  the  competency statute.  In  this  case,  Christopher's  doctor's  testimony  closely tracked the language of Wis. Stat. § 51.61(1)(g)4.b.:

> Q. Dr. Keshena, in the course of your treatment of [Christopher] have you had an opportunity to explain to him the advantages, disadvantages, and alternatives to the medication?
>
> A. Yes.

38

Q. And after you've done that, in your opinion would he be substantially incapable or substantially capable of applying an understanding of the advantages, disadvantages, and alternatives to his own conditions in order to make an informed choice as to whether to accept or refuse psychotropic medication?

A. He's not capable.

Q. So you're saying he's substantially incapable?

A. Yes.

Unlike in Melanie L., we do not have to "speculate upon [Dr. Keshena's] meaning"; we are certain Dr. Keshena applied the statutory standard.

¶55 In addition to Dr. Keshena's testimony, Dr. Musunuru's report also tracked the statutory language. Dr. Musunuru's report made six key findings: (1) "the advantages and disadvantages and the alternatives to accepting particular medication [were] explained to the subject in detail[]"; (2) "the subject did not appear to understand the explanation"; (3) "the subject holds patently false beliefs about the treatment recommended medications, which prevent an understanding of the legitimate risks and benefits"; (4) "due to the subject's mental illness, the subject is substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to make an informed choice as to accept or refuse medications"; (5) "the subject has no insight into his illness due to his mental illness"; and (6) "the subject is not competent to refuse psychotropic medications."

¶56 Finally, Dr. Keshena's testimony was not disputed at trial. In fact, cross-examination of Dr. Keshena, which brought

39

about the discussion of Christopher's prior experience with lithium, provided further evidence that Christopher was "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to [his] mental illness . . . in order to make an informed choice as to whether to accept or refuse medication or treatment."[28] These uncontroverted statements establish that Christopher was incompetent to refuse psychotropic medication and treatment, so it was not necessary for Dr. Keshena to engage in a lengthier discussion of her explanation of the advantages, disadvantages, and alternatives. <u>See</u> <u>Melanie L.</u>, 349 Wis. 2d 148, ¶67 ("Medical professionals and other professionals should document the timing and frequency of their explanations so that, <u>if necessary</u>, they have documentary evidence to help establish this element in court." (emphasis added)). Because these statements mirrored the statutory standard, they met the statutory standard. Thus, the circuit court did not err when it concluded that the County proved by clear and convincing evidence that Christopher was incompetent to refuse psychotropic medication and treatment as required by Wis. Stat. § 51.61(1)(g)4.b.

---

[28] During cross-examination, Dr. Keshena testified that Christopher "was previously on lithium" and that Christopher told her "he didn't have any side effects from that medication, but he thought it was a placebo."

40

IV. CONCLUSION

¶57  First, we hold that Wis. Stat. § 51.20(1)(ar) is facially constitutional because it is reasonably related to the State's legitimate interest in providing care and assistance to inmates suffering from mental illness. Second, we affirm the circuit court because it did not err when it found by clear and convincing evidence that Christopher was incompetent to refuse psychotropic medication and treatment. We therefore uphold the circuit court's order for involuntary commitment, order for involuntary medication and treatment, and order denying postcommitment relief.

*By the Court.*—The circuit court's orders are affirmed.

¶58  REBECCA G. BRADLEY, J., did not participate.

41

¶59 SHIRLEY S. ABRAHAMSON, J. *(concurring in part, dissenting in part).* At issue in this case are (1) whether Wis. Stat. § 51.20(1)(ar), which permits the involuntary commitment of mentally ill prisoners, is facially unconstitutional because it does not require a finding of dangerousness to involuntarily commit a prisoner; and (2) whether Winnebago County met its burden of proof by clear and convincing evidence that the defendant, Christopher S., was incompetent to refuse psychotropic medication.

¶60 The majority opinion holds that Wis. Stat. § 51.20(1)(ar) is facially constitutional[1] even though the statute does not require a finding of dangerousness to involuntarily commit a prisoner to a mental institution.[2] Applying the rational basis test, the majority opinion concludes that the involuntary commitment statute does not violate substantive due process because it is reasonably related to a legitimate state interest, namely "providing care and assistance to [prisoners] suffering from mental illness."[3]

¶61 I write separately to make two points:

(1) Although several Wisconsin and United States Supreme Court cases are informative, none clearly describes the standard to be applied to a substantive due

---

[1] Majority op., ¶8.

[2] Majority op., ¶46 n.26.

[3] Majority op., ¶8.

1

process challenge to a prisoner's involuntary commitment to a mental institution. I conclude that the State must show an "essential" or "overriding" state interest——for example, ensuring prison safety or security, or providing treatment to a gravely disabled prisoner——to overcome a prisoner's significant, constitutionally protected liberty interests in avoiding involuntary commitment to a mental institution and the stigma attached thereto. The majority opinion does not interpret Wis. Stat. § 51.20(1)(ar) as requiring an "essential" or "overriding" state interest to involuntarily commit a prisoner to a mental institution. Unless it is so interpreted, I conclude that the statute is unconstitutional as a matter of substantive due process.

(2) I concur in the majority opinion's conclusion that Winnebago County met its burden of proving by clear and convincing evidence that Christopher S. was incompetent to refuse psychotropic medication as required for involuntary medication under Wis. Stat. § 51.61(g).[4] Nevertheless, in recognition of the significant, constitutionally protected liberty interests at play in involuntary medication proceedings, the County and the circuit court should take the time to make a record pursuant to Outagamie

---

[4] Majority op., ¶57.

County v. Melanie L., 2013 WI 67, ¶67, 349 Wis. 2d 148, 833 N.W.2d 607.

¶62 For the reasons set forth, I dissent in part and write separately.

I

¶63 Applying the rational basis test, the majority opinion determines that Wis. Stat. § 51.20(1)(ar) is facially constitutional because commitment under Wis. Stat. § 51.20(1)(ar) is reasonably related to the State's interest "in providing care and assistance to [prisoners] suffering from mental illness."[5] The majority opinion also concludes that substantive due process does not require a finding of dangerousness in order to involuntarily commit a prisoner to a mental institution.[6]

¶64 Despite acknowledging prisoners' constitutionally protected liberty interests in being free from involuntary commitment to a mental institution and the associated stigma, the majority opinion gives the prisoner's liberty interest little or no weight.

¶65 In a substantive due process challenge, a court must first define the individual's protected constitutional interest before identifying when, if at all, a competing state interest might outweigh it. State v. Wood, 2010 WI 17, ¶18, 323

---

[5] Majority op., ¶8.

[6] Majority op., ¶¶42, 46 & n.26.

Wis. 2d 321, 780 N.W.2d 63 (quoting Washington v. Harper, 494 U.S. 210, 220 (1990)).

¶66 All persons, including prisoners, have a significant, constitutionally protected liberty interest in avoiding involuntary commitment to a mental institution and the stigma often associated with such a commitment.[7]

¶67 The United States Supreme Court has not ruled on what level of scrutiny applies when a court reviews a statute implicating a prisoner's liberty interest in not being involuntarily committed to a mental institution and experiencing the associated stigma. Nonetheless, some guidance can be derived from relevant case law.

¶68 In Vitek v. Jones, 445 U.S. 480 (1980), the United States Supreme Court addressed the procedural due process

---

[7] See, e.g., Sandin v. Conner, 515 U.S. 472, 479 n.4, 484 (1995) (describing a prisoner's interest in not being transferred to a mental institution as a constitutionally protected liberty interest and stating that involuntary commitment to a mental institution is "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and ha[ving] 'stigmatizing consequences.'") (referencing Vitek v. Jones, 445 U.S. 480, 493-94 (1980) and Washington v. Harper, 494 U.S. 210, 221-22 (1990)); Foucha v. Louisiana, 504 U.S. 71, 79-80 (1992) (holding that given an individual's liberty interests, an individual found not guilty by reason of insanity could not continue to be confined after he was no longer mentally ill and did not pose a danger to himself or others); Vitek v. Jones, 445 U.S. 480, 493 (1980) (holding that the involuntary transfer of a prisoner to a mental hospital implicated a liberty interest protected by the due process clause); Addington v. Texas, 441 U.S. 418, 425 (1979) (stating that involuntary commitment "for any purpose constitutes a significant deprivation of liberty that requires due process protection" and may subject a committed individual to stigma even after the commitment and criminal sentence have ended)).

protections required for involuntarily transferring a prisoner to a mental institution. The Court determined that a prisoner facing involuntary transfer to a mental institution has a constitutionally protected liberty interest in avoiding the deprivation of liberty and the stigma associated with such a transfer.[8] Prisoners have such liberty interests even though they are imprisoned because a criminal sentence "do[es] not authorize the State to classify [a prisoner] as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections."[9] Nevertheless, the Vitek Court did not state what level of scrutiny applies when gauging the constitutionality of a statute authorizing the involuntary commitment of a prisoner to a mental institution.

¶69 In Washington v. Harper, 494 U.S. 210 (1990), the United States Supreme Court applied rational basis scrutiny to a prison regulation authorizing the involuntary medication of dangerous or gravely disabled prisoners.[10] The Court stated that the rational basis test applied in light of the State's interests in prison safety and security, even though prisoners have a liberty interest in avoiding the involuntary administration of antipsychotic medication.[11] In applying the

---

[8] Vitek, 445 U.S. at 494.

[9] Vitek, 445 U.S. at 494.

[10] Harper, 494 U.S. at 224, 226.

[11] Harper, 494 U.S. at 223.

rational basis test to the challenged prison regulation, the Harper Court described the state's interest——the safety of prisoners and staff——as legitimate, important, and "necessarily encompass[ing] an interest in providing [the mentally ill prisoner] with medical treatment for his illness."[12]

¶70 Although Harper stated it was applying rational basis scrutiny, the United States Supreme Court has subsequently described Harper and other involuntary medication cases as holding that involuntary medication of a prisoner is impermissible absent an "essential" or "overriding" state interest.[13] See Sell v. United States, 539 U.S. 166, 179 (2003) ("[A]n individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs——an interest that only an 'essential' or 'overriding' state interest might overcome.") (internal quotation marks omitted); Riggins v. Nevada, 504 U.S. 127, 135 (1992) ("Under Harper, forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness.").

¶71 Thus, Sell and Riggins (as well as State v. Wood, 2010 WI 17, ¶25, 323 Wis. 2d 321, 780 N.W.2d 63) incorporate the need for an "essential" or "overriding" state interest, at least in involuntary medication cases.

---

[12] Harper, 494 U.S. at 225-26.

[13] So has this court. See State v. Wood, 2010 WI 17, ¶¶19-20, 22-25, 323 Wis. 2d 321, 780 N.W.2d 63 (discussing Harper, Riggins, and Sell).

¶72 An "essential" or "overriding" state interest is not required in applying rational basis scrutiny. In an ordinary rational basis analysis, like the majority opinion conducts, a court decides whether the challenged statute is rationally related to a legitimate state interest.[14] Thus, the United States Supreme Court's requirement of an "essential" or "overriding" state interest indicates that a more searching analysis is required, at least when the State seeks to involuntarily medicate a prisoner.

¶73 Involuntary medication and involuntary commitment to a mental institution impose similar burdens on prisoners' constitutionally protected liberty interests. As a result, the two should be treated similarly in conducting a substantive due process analysis.

¶74 Both involuntary medication and involuntary commitment to a mental institution "exceed[] [a criminal] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . ."[15]

¶75 Both involuntary medication and involuntary commitment to a mental institution are "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and ha[ve] 'stigmatizing consequences.'"[16] As a result,

---

[14] See State v. Alger, 2015 WI 3, ¶39, 360 Wis. 2d 193, 858 N.W.2d 346.

[15] Sandin, 515 U.S. at 484 (citing Harper, 494 U.S. at 221-22; Vitek, 445 U.S. at 493).

[16] Sandin, 515 U.S. at 479 n.4 (quoting Vitek, 445 U.S. at 493-94).

7

the mere fact that a prisoner is serving a criminal sentence does not authorize the State to designate the prisoner as mentally ill, involuntarily commit him or her to a mental institution, or involuntarily medicate him or her without significant due process protections.[17]

¶76 Furthermore, involuntary commitment to a mental institution under Wis. Stat. § 51.20(1)(ar) and involuntary medication under Wis. Stat. § 51.61(1)(g) are significantly intertwined, more than the majority opinion lets on.

¶77 The close relationship between Wis. Stat. § 51.20(1)(ar) and Wis. Stat. § 51.61(1)(g) (as demonstrated by the facts of this case) further illustrates why requiring, as a matter of substantive due process, an "essential" or "overriding" state interest in both involuntary commitment and involuntary medication cases is appropriate.

¶78 In the instant case, Christopher S. was ordered involuntarily committed and involuntarily medicated in the same proceeding, before the same judge, in the same court, on the same day. A temporary involuntary medication order was also entered during the pendency of Christopher S.'s involuntary commitment proceedings.

¶79 While the jury was deliberating whether Christopher S. should be involuntarily committed, the trial judge conducted a bench trial to determine whether Christopher S. could be involuntarily medicated. Based on the jury verdict, the trial

---

[17] See Sandin, 515 U.S. at 484.

judge granted the petition for involuntary commitment for a six-month period. The trial judge also issued an involuntary medication order.

¶80 One of the requirements for involuntary commitment of a prisoner to a mental institution under Wis. Stat. § 51.20(1)(ar) is that the prisoner be "a proper subject for treatment and [be] in need of treatment."

¶81 For what treatment did the County seek to involuntarily commit Christopher S.? The involuntary administration of psychotropic medication.

¶82 Simply put, the County sought to involuntarily commit Christopher S. for the purpose of treating him by involuntarily administering psychotropic medication. Despite the majority opinion's efforts to distinguish between the two statutes for the purpose of its constitutional analysis, the two statutes are, in fact, intimately intertwined.

¶83 Upon consideration of the case law and the relationship between involuntary medication and involuntary commitment, I conclude that when the State seeks to involuntarily commit or involuntarily medicate a prisoner, an "essential" or "overriding" state interest is required to outweigh the prisoner's significant, constitutionally protected liberty interests in avoiding involuntary medication or involuntary commitment and the associated stigma.

¶84 Although I agree with the majority opinion that a finding of dangerousness is not required to outweigh a prisoner's constitutionally protected liberty interests, I

9

conclude that when the State seeks to involuntarily commit a prisoner, the State must demonstrate an "essential" or "overriding" state interest to outweigh the prisoner's significant, constitutionally protected liberty interests in avoiding involuntary commitment and the associated stigma. Such an "essential" or "overriding" state interest may be, for example, safeguarding the prison, prisoners, and staff against a mentally ill prisoner who is dangerous to him or herself or others, or providing treatment to a gravely disabled prisoner.

¶85 The majority opinion concludes the state's interest "in providing care and assistance to [prisoners] suffering from mental illness"[18] is sufficient. Although the majority opinion describes this state interest as "compelling,"[19] providing involuntary care and assistance to prisoners suffering from mental illness, standing alone, is not an "essential" or "overriding" state interest as these terms are used in the case law. Providing involuntary care and assistance to prisoners suffering from mental illness is not an "essential" or "overriding" state interest unless the prisoner poses a danger to self or others, is gravely disabled, or another "essential" or "overriding" state interest exists.

¶86 The state's interest in providing care and assistance to mentally ill prisoners (or others within the State's care) is present in all involuntary commitment and involuntary medication

---

[18] Majority op., ¶8.

[19] Majority op., ¶44.

10

cases. The United States Supreme Court's involuntary medication and involuntary commitment cases have, however, all focused on state interests above and beyond providing care and assistance to the mentally ill person. The Court has addressed, for instance, "essential" or "overriding" interests such as ensuring the safety and security of the prison, treating a gravely disabled prisoner,[20] restoring trial competency,[21] or protecting society and providing treatment to individuals found not guilty by reason of insanity.[22]

¶87 If the state's interest in providing care and assistance to mentally ill prisoners were sufficient to overcome a prisoner's countervailing liberty interests, then a statute permitting involuntary commitment or involuntary medication based solely on a finding of mental illness would be constitutionally permissible. However, a finding of mental illness alone is not enough to support involuntary commitment.[23]

¶88 Unlike providing care and assistance to mentally ill prisoners, ensuring the safety and security of prisons, prison staff, and prisoners by removing dangerous (to self or others) mentally ill prisoners, or providing care and treatment to

---

[20] See Harper, 494 U.S. at 222-24.

[21] See Sell, 539 U.S. at 178-80.

[22] See Jones v. United States, 463 U.S. 354, 365-66 (1983).

[23] See, e.g., O'Connor v. Donaldson, 422 U.S. 563, 575 (1975) (implying that a State's legitimate interests in providing care and treatment could not overcome a person's liberty interests).

11

gravely disabled prisoners, are "essential" and "overriding" state interests. Wisconsin Stat. § 51.20(1)(ar) is not, however, limited to circumstances in which "essential" and "overriding" state interests are present.

¶89 On the contrary, Wis. Stat. § 51.20(1)(ar) does not require the State or County to have any interest above and beyond providing care and assistance to mentally ill prisoners. The statute provides:

> If the individual is an inmate of a state prison, the petition may allege that the inmate is mentally ill, is a proper subject for treatment and is in need of treatment. The petition shall allege that appropriate less restrictive forms of treatment have been attempted with the individual and have been unsuccessful and it shall include a description of the less restrictive forms of treatment that were attempted. The petition shall also allege that the individual has been fully informed about his or her treatment needs, the mental health services available to him or her and his or her rights under this chapter and that the individual has had an opportunity to discuss his or her needs, the services available to him or her and his or her rights with a licensed physician or a licensed psychologist. The petition shall include the inmate's sentence and his or her expected date of release as determined under s. 302.11 or 302.113, whichever is applicable. The petition shall have attached to it a signed statement by a licensed physician or a licensed psychologist of a state prison and a signed statement by a licensed physician or a licensed psychologist of a state treatment facility attesting either of the following:
>
> > 1. That the inmate needs inpatient treatment at a state treatment facility because appropriate treatment is not available in the prison.
> >
> > 2. That the inmate's treatment needs can be met on an outpatient basis in the prison.

12

¶90 As a result, the text of Wis. Stat. § 51.20(1)(ar) is not rationally related to an "essential" or "overriding" state interest. Pursuant to Wis. Stat. § 51.20(1)(ar), the State or County may commit a mentally ill prisoner without any "essential" or "overriding" state interest.

¶91 Because Wisconsin Stat. § 51.20(1)(ar) is not reasonably related to an "essential" or "overriding" state interest, I conclude Wis. Stat. § 51.20(1)(ar) is unconstitutional as a matter of substantive due process.

II

¶92 Finally, I wish to offer a brief comment about Christopher S.'s claim that the County did not show by clear and convincing evidence that he was incompetent to refuse psychotropic medication.

¶93 As I explained above, the jury trial regarding Christopher's involuntary commitment took place the same day as the bench trial regarding his involuntary medication. Only one witness, Dr. Keshena, testified.

¶94 The direct examination of Dr. Keshena largely parroted the language of Wis. Stat. § 51.61(1)(g)4.b., stating, in relevant part:

> Q. Dr. Keshena, in the course of your treatment of [Christopher], have you had an opportunity to explain to him the advantages, disadvantages, and alternatives to the medication?
>
> A. Yes.
>
> Q. And after you've done that, in your opinion would he be substantially incapable or substantially capable of applying an understanding of the advantages, disadvantages, and alternatives to

13

his own condition in order to make an informed choice as to whether to accept or refuse psychotropic medication?

A. He's not capable.

Q. So you're saying he's substantially incapable?

A. Yes.

¶95 Elsewhere in the record there is ample evidence that the doctors who treated Christopher S. explained the advantages, disadvantages, and alternatives to medication to him. The trial judge was familiar with this evidence. As a result, I concur in the majority opinion's conclusion that the County met its burden of proving by clear and convincing evidence that Christopher S. was incompetent to refuse psychotropic medication and treatment.

¶96 Nevertheless, I write separately to point out that the majority opinion explains that Dr. Keshena's testimony was "not disputed at trial," so it was "not necessary for Dr. Keshena to engage in a lengthier discussion of her explanation of the advantages, disadvantages, and alternatives" under Outagamie County v. Melanie L., 2013 WI 67, ¶67, 349 Wis. 2d 148, 833 N.W.2d 607.[24] Although lengthier discussion may not have been necessary because of the record in this case, given the significant constitutional rights at stake, the County should develop a sufficient record to show that, for instance, the person was advised of the advantages, disadvantages, and alternatives to treatment in order to enable appellate review. See Melanie L., 349 Wis. 2d 148, ¶67.

---

[24] Majority op., ¶56.

14

¶97 For the reasons set forth, I dissent in part and write separately.

¶98 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.