REILLY, P.J.
*615 ¶1 C.S. was found not competent to make informed decisions as to the advantages and disadvantages of accepting particular medication or treatment while a prisoner and was involuntarily *616 medicated per WIS. STAT. § 51.61(1)(g) (2017-18).[1] C.S. argues that § 51.61(1)(g) is facially unconstitutional as it does not require a finding of dangerousness before involuntarily medicating prisoners who are committed under WIS. STAT. § 51.20(1)(ar). We affirm as § 51.61(1)(g) is reasonably related to the state's legitimate interest in providing care and assistance to prisoners suffering from mental illness who are found not competent to refuse medication and treatment.[2]
BACKGROUND
¶2 In 2005, C.S. was convicted of mayhem as a repeater and sentenced to twenty years in prison (ten years' initial confinement, ten years' extended supervision).[3] C.S. was diagnosed with schizophrenia. Involuntary commitment and medication orders were obtained in 2012 and those court orders have been extended on several occasions. The petition at issue in this case was filed on May 22, 2015. Within the *579 petition, a psychologist affirmed C.S.'s schizophrenia diagnosis and opined that C.S. satisfied the statutory criteria for an extension of commitment and for *617 involuntary medication. C.S. objected, and a jury trial was held in June 2015. The jury, addressing the elements of WIS. STAT. § 51.20(1)(ar), found that (1) C.S. was mentally ill; (2) C.S. was a proper subject for treatment and in need of treatment; (3) C.S. was an inmate of a state prison; (4) less restrictive forms of appropriate treatment had been attempted and were unsuccessful; and (5) and (6) C.S. had been fully informed of his treatment needs, the mental health services available, and his rights, and he had an opportunity to discuss these matters with a licensed physician or psychologist. The circuit court entered an order extending C.S.'s commitment under § 51.20(1)(ar) and an order for involuntary medication and treatment under WIS. STAT. § 51.61(1)(g).[4]
¶3 In a postcommitment motion, C.S. challenged WIS. STAT. § 51.61(1)(g) as "unconstitutional for all prisoners committed under WIS. STAT. § 51.20(1)(ar)" as it allows prisoners to be involuntarily medicated without a finding of dangerousness. The circuit court denied the motion.[5] C.S. appeals.
*618 ¶4 We begin by noting that C.S. previously made a facial challenge to his commitment in Winnebago County v. Christopher S. (C.S. I) , 2016 WI 1, ¶3, 366 Wis. 2d 1, 878 N.W.2d 109, on the ground that WIS. STAT. § 51.20(1)(ar) violates substantive due process as it allows the involuntary commitment of a prisoner without a finding that he or she is dangerous. Our supreme court rejected this argument, finding that § 51.20(1)(ar) is constitutional as "it is reasonably related to the State's legitimate interest in providing care and assistance to inmates suffering from mental illness." C.S. I , 366 Wis. 2d 1, ¶24, 878 N.W.2d 109. In this appeal, C.S. challenges the intertwined issue of involuntary medication of prisoners under WIS. STAT. § 51.61(1)(g), without a finding of dangerousness.
Standards of Review
¶5 "The constitutionality of a statute is a question of law that we review de novo." State v. Wood , 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63. We presume every statute is constitutional. Id. A party challenging a statute must "prove that the statute is unconstitutional beyond a reasonable doubt." State v. Cole , 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328. C.S. presents a facial challenge to the constitutionality of WIS. STAT. § 51.61(1)(g).[6]
*580 See Wood , 323 Wis. 2d 321, ¶13, 780 N.W.2d 63. "Under such a challenge, the challenger must show that the law cannot be enforced 'under any circumstances.' " Id. (citation omitted). If *619 the party succeeds, "the law is void 'from its beginning to the end.' " Id. (citation omitted).
¶6 We discern an individual's substantive due process rights from the Fourteenth Amendment to the United States Constitution and article I, section 1 of the Wisconsin Constitution. Wood , 323 Wis. 2d 321, ¶17, 780 N.W.2d 63. "The right to substantive due process addresses 'the content of what government may do to people under the guise of the law.' " Id. (citation omitted). "An individual's substantive due process rights protect against a state action that is arbitrary, wrong, or oppressive," id. , and "forbids a government from exercising 'power without any reasonable justification in the service of a legitimate governmental objective,' " State v. Luedtke , 2015 WI 42, ¶74, 362 Wis. 2d 1, 863 N.W.2d 592 (citation omitted).
¶7 A challenge to WIS. STAT. § 51.61(1)(g) is subject to rational basis review. See C.S. I , 366 Wis. 2d 1, ¶42, 878 N.W.2d 109 ; see also Washington v. Harper , 494 U.S. 210, 223-26, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). "A law subject to rational basis review will be upheld 'unless it is patently arbitrary and bears no rational relationship to a legitimate government interest.' " C.S. I , 366 Wis. 2d 1, ¶36, 878 N.W.2d 109 (citation omitted). "When faced with a substantive due process challenge, we examine 'whether the statute is a reasonable and rational means to the legislative end.' " Luedtke , 362 Wis. 2d 1, ¶76, 863 N.W.2d 592 (citation omitted).
*620 DISCUSSION
¶8 C.S. argues that " WIS. STAT. § 51.61(1)(g) violates substantive due process because it does not require a finding of dangerousness at any point to involuntarily administer medication to prisoners." We conclude that the involuntary medication and treatment of a prisoner is facially constitutional as there is a legitimate reason for the state to medicate/treat even when there is no finding of dangerousness-the general welfare of the prisoner.
¶9 The involuntary commitment of a person (not in prison) requires a petition that satisfies three elements: (1) that the person is mentally ill, (2) is a proper subject for treatment, and (3) is "dangerous." WIS. STAT. § 51.20(1)(a). If the person is a prisoner, § 51.20(1)(ar)"carves out a special" procedure that replaces the third element of "dangerousness" with four additional elements. See C.S. I , 366 Wis. 2d 1, ¶¶26-27, 878 N.W.2d 109. The elements under § 51.20(1)(ar) are as follows: (1) the individual is an inmate of the Wisconsin state prison system; (2) the inmate is mentally ill; (3) the inmate is a proper subject for treatment and is in need of treatment; (4) appropriate less restrictive forms of treatment were attempted with the inmate, and they were unsuccessful; (5) the inmate was fully informed about his treatment needs, the mental health services available, and his rights; and (6) the inmate had an opportunity to discuss his treatment needs, the services available, and his rights with a psychologist or a licensed physician.[7] C.S. I , 366 Wis. 2d 1, ¶27, 878 N.W.2d 109.
*581 ¶10 A prisoner who has been committed for treatment under WIS. STAT. § 51.20(1)(ar) is a "patient"
*621 entitled to certain rights under WIS. STAT. § 51.61(1), including the right to refuse medication. At issue in this case is § 51.61(1)(g), which states that a patient has "the right to exercise informed consent with regard to all medication and treatment unless the committing court ... makes a determination, following a hearing, that the individual is" (1) not competent to refuse medication or treatment or (2) "unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the individual or others," i.e., the person is dangerous to himself or others unless medication or treatment is administered. Sec. 51.61(1)(g)3. (emphasis added). C.S. challenges only the first component, which allows a prisoner to be involuntary medicated based on a finding that he or she is not competent to refuse, without any determination that the prisoner is dangerous.
¶11 "[A]n individual is not competent to refuse medication or treatment if, because of mental illness ... and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual," either the court finds that "[t]he individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives" or "[t]he individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness ... in order to make an informed choice as to whether to accept or refuse medication or treatment."[8] WIS. STAT. § 51.61(1)(g)4. If *622 a prisoner has been committed under WIS. STAT. § 51.20(1)(ar), the court may order involuntary medication or treatment if the court finds that the individual is not competent under § 51.61(1)(g)4. without any finding that the individual is dangerous so long as elements four, five, and six of § 51.20(1)(ar) are proven. Our supreme court has determined that commitment of a prisoner under § 51.20(1)(ar) without a finding of dangerousness does not violate constitutional protections. C.S. I , 366 Wis. 2d 1, ¶47, 878 N.W.2d 109. C.S.'s challenge in this case is to the involuntary medication order rather than the involuntary commitment order.
¶12 To determine whether a substantive right protected by the Due Process Clause has been violated, we must first determine whether a person has a liberty interest and then balance that interest against the relevant state interests. See Cruzan v. Director, Mo. Dep't of Health , 497 U.S. 261, 279, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). We recognize the established maxim that "a person competent to make medical decisions has a 'significant' liberty interest in avoiding forced medication of psychotropic drugs."[9] Wood , 323 Wis. 2d 321, ¶25, 780 N.W.2d 63 (citing Harper , 494 U.S. at 221, 110 S.Ct. 1028 ). Although courts have found the liberty interest in avoiding unwanted antipsychotic medication to be "significant," it is not *582 absolute. See Riggins v. Nevada , 504 U.S. 127, 135, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) ; *623 Harper , 494 U.S. at 220, 222-23 & n.8, 226-27, 110 S.Ct. 1028 ; Youngberg v. Romeo , 457 U.S. 307, 319-320, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).
¶13 Our supreme court has already determined in C.S. I that "the State has more than a well-established and legitimate interest; it has a 'compelling' interest in providing care and assistance to those who suffer from a mental disorder." C.S. I , 366 Wis. 2d 1, ¶44, 878 N.W.2d 109 (citation omitted). In a prison environment, that interest is even more important as "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle v. Gamble , 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). It is not just an interest, but an obligation to provide prisoners with medical treatment, which includes medication prescribed to treat mental illness. "The State has undertaken the obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution." Harper , 494 U.S. at 225, 110 S.Ct. 1028. The state's interest is significantly stronger where, as here, the prisoner has been found not competent to make his own treatment decisions. State v. Dennis H. , 2002 WI 104, ¶5, 255 Wis. 2d 359, 647 N.W.2d 851 ("The state has a well-established, legitimate interest under its parens patriae power in providing care to persons unable to care for themselves ....").
¶14 WISCONSIN STAT. § 51.61(1)(g), like WIS. STAT. § 51.20(1)(ar), is rationally related to the County's legitimate interest in "providing care and assistance to inmates suffering from mental illness." C.S. I , 366 Wis. 2d 1, ¶46, 878 N.W.2d 109. We accept that a mentally ill prisoner has a significant liberty interest to refuse medication if that prisoner is competent to make such a decision *624 under § 51.61(1)(g)1., 3.See also Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶89, 349 Wis. 2d 148, 833 N.W.2d 607. Only under the standards found in § 51.61(1)(g)3.-4. may patients be medicated against their will. The statutory scheme is tailored to protect against the unwarranted involuntary administration of medication or treatment. In order to find a prisoner "not competent to refuse medication or treatment," the court must make an additional "determination, following a hearing, that the individual is not competent to refuse medication" or "a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the individual or others" based on clear and convincing evidence. Sec. 51.61(1)(g)3.-4. ; Melanie L. , 349 Wis. 2d 148, ¶83, 833 N.W.2d 607.
¶15 Further, the legislature provided additional procedural protections to a prisoner in light of omitting the "dangerousness" component from WIS. STAT. § 51.20(1)(ar). A medical professional must establish "that appropriate less restrictive forms of treatment have been attempted with the individual and have been unsuccessful" and "that the individual has been fully informed about his or her treatment needs, the mental health services available to him or her and his or her rights under this chapter and that the individual has had an opportunity to discuss his or her needs, the services available to him or her and his or her rights with a licensed physician or a licensed psychologist." Sec. 51.20(1)(ar). Each of these additional elements relate to the prisoner's mental health needs, whether it is appropriate to treat the mental health needs of the prisoner, and protect against the unwarranted involuntary administration of medication or treatment, see C.S. I. , 366 Wis. 2d 1, ¶¶25-29, 47, 878 N.W.2d 109, and each element must *625 be *583 established prior to a finding under WIS. STAT. § 51.61(1)(g)3. that a prisoner is not competent.
¶16 C.S. argues that WIS. STAT. § 51.61(1)(g) is facially unconstitutional based on the holdings in Harper and Wood . In Harper , the United States Supreme Court addressed under what factual circumstances a state may administer antipsychotic drugs to a prisoner against his will. Harper , 494 U.S. at 220, 110 S.Ct. 1028. Harper was a Washington state prison inmate who refused to take medications to treat his mental illness. Id. at 214, 110 S.Ct. 1028. Of worthy note, Harper was not found to be mentally incompetent. Id. at 237 n.2, 110 S.Ct. 1028 (Stevens, J., concurring in part and dissenting in part). The facility where Harper was incarcerated had a policy providing that an inmate may be involuntarily treated with medication ordered by a psychiatrist if he "(1) suffers from a 'mental disorder' and (2) is 'gravely disabled' or poses a 'likelihood of serious harm' to himself, others, or their property." Id. at 215, 110 S.Ct. 1028 (citation omitted). Harper sued prison officials, claiming that the policy violated his due process rights.
¶17 The Court in Harper concluded that Harper possessed a significant "liberty interest" in avoiding unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment, but "[t]he extent of a prisoner's rights under the Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement." Id. at 221-22, 110 S.Ct. 1028. Focusing on the important "government interest" "in combating the danger posed by a person to both himself and others ... in a prison environment," the Court held that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs *626 against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 225, 227, 110 S.Ct. 1028.
¶18 In Wood , the defendant was found not guilty of a crime by reason of mental disease or defect (NGI) and committed to Mendota Mental Health Institute. Wood , 323 Wis. 2d 321, ¶1, 780 N.W.2d 63. The state requested and was granted an order permitting the involuntary administration of medication to Wood under WIS. STAT. § 971.17(3)(c). Wood , 323 Wis. 2d 321, ¶¶2, 8, 780 N.W.2d 63. Wood challenged § 971.17(3)(c) as facially unconstitutional as it permitted involuntary medication without a finding of dangerousness. Wood , 323 Wis. 2d 321, ¶¶11, 14, 780 N.W.2d 63. The court concluded that a finding of present dangerousness was not required where an individual is adjudged NGI in light of the state's "interest ... in treating the underlying mental illness in order to prevent more criminal behavior and prepare the individual for conditional release and for eventual release from the commitment" as well as the "nature of original proceedings in which a defendant is adjudged NGI." Id. , ¶¶32-33.
¶19 We disagree with C.S. that the conclusions in Harper and Wood dictate a finding that WIS. STAT. § 51.61(1)(g) is unconstitutional. The important distinction is the difference between a competent mentally ill individual (must prove dangerousness under the second prong in § 51.61(1)(g)3. ), as in Harper , versus a not competent mentally ill person such as C.S. (must prove not competent under the first prong in § 51.61(1)(g)3. ). The legitimate interest in Harper was the safety and security of the prison, not the care and assistance of its mentally ill inmates. Harper requires a finding of dangerousness when the State seeks to involuntarily medicate a competent inmate when it relies entirely *584 upon "the safety and security of the prison as its legitimate *627 reason for administering the antipsychotic medication." C.S. I , 366 Wis. 2d 1, ¶46 n.26, 878 N.W.2d 109.
¶20 Wood , in contrast, held, based on the court's analysis of Harper , Riggins , and Sell v. United States , 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), that "the state may not order the administration of psychotropic drugs to a mentally ill individual unless it demonstrates an overriding justification to administer the drugs and a determination of medical appropriateness." Wood , 323 Wis. 2d 321, ¶25, 780 N.W.2d 63. The court indicated that dangerousness was "one way the state can establish an overriding justification," but left the door open as to whether a finding of dangerousness was required "in other contexts." Id.
CONCLUSION
¶21 C.S. has failed to establish that WIS. STAT. § 51.61(1)(g) is unconstitutional under all circumstances and beyond a reasonable doubt. See C.S. I , 366 Wis. 2d 1, ¶47, 878 N.W.2d 109. Section 51.61(1)(g) is constitutional as it is reasonably related to the state's interest in caring for, treating, and assisting prisoners who suffer from mental illness where a court determines under § 51.61(1)(g)4. that a prisoner is not competent to refuse medication. A finding of dangerousness is not required prior to involuntarily medicating a prisoner who is found not competent to refuse medication under the law.
By the Court. -Orders affirmed.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. We recognize that the 2015-16 version of the Wisconsin Statutes was in effect when the petition for involuntary commitment at issue in this case was filed, but as the specific statutory sections at issue have not been amended we will reference the 2017-18 version throughout.

This appeal was converted from a one-judge appeal to a three-judge appeal by the September 12, 2018 order of this court. See Wis. Stat. § 752.31(3) ; Wis. Stat. Rule 809.41(3).

For a detailed procedural and factual history of this case, see Winnebago County v. Christopher S. (C.S. I) , 2016 WI 1, ¶¶21-22, 366 Wis. 2d 1, 878 N.W.2d 109, and Winnebago County v. C.S. , No. 2016AP1955, unpublished slip op. ¶¶2-3, 378 Wis. 2d 220, 2017 WL 3525411 (WI App Aug. 16, 2017).

Shortly thereafter, C.S. was released from prison on extended supervision, which concluded the involuntary commitment and medication orders. While C.S. failed to timely file a notice of intent to pursue postcommitment relief, we granted his motion to extend the deadline and stayed the briefing in this case pending this court's decision in C.S.'s appeal of his previous 2014 extension which raised an identical issue. See Winnebago Cty. v. C.S. , No. 2016AP1955, unpublished slip op. ¶1. In that case, we dismissed the case as moot as C.S. was no longer incarcerated. Id. , ¶¶7-10. Although this case is moot, for the reasons stated in C.S. I , 366 Wis. 2d 1, ¶¶30-32, 878 N.W.2d 109, we will reach the merits of this appeal.

The Honorable Karen L. Seifert entered the orders extending C.S.'s commitment and for involuntary medication and treatment. The Honorable Barbara H. Key entered the order denying C.S.'s postcommitment motion.

We note that C.S. alleges that Wis. Stat. § 51.61(1)(g) is "unconstitutional facially and as applied to all prisoners committed under Wis. Stat. § 51.20(1)(ar)." In a true "as applied" challenge, the facts of the particular case are assessed, which does not appear to be C.S.'s focus on appeal. See State v. Wood , 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63. Although C.S. is suggesting his challenge is "as applied," his arguments suggest that his challenge is only a facial challenge to the law as he indicates that it is unconstitutional "as applied to all prisoners," which really means "under any circumstances." See id. (citation omitted). Accordingly, we will review the statute as being unconstitutional on its face.

"Both Wis. Stat. § 51.20(1) and Wis. Stat. § 51.20(1)(ar) are treatment focused; these statutes emphasize that a person is being committed because he or she has a mental illness and needs treatment to help that illness." C.S. I , 366 Wis. 2d 1, ¶27, 878 N.W.2d 109.

Although not pertinent to his facial challenge, C.S. was found not competent under the second finding, specifically that he was "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her condition in order to make an informed choice as to whether to accept or refuse psychotropic medications."

"The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." Washington v. Harper , 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).