COURT OF APPEALS
DECISION
DATED AND FILED

June 14, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2078**

Cir. Ct. No. **2022ME157**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

IN THE MATTER OF THE MENTAL COMMITMENT OF T.G.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

T.G.,

RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Winnebago County: LAKEISHA D. HAASE, Judge. *Affirmed.*

¶1 GUNDRUM, P.J.[1] Thomas[2] appeals from orders of the circuit court involuntarily committing him under WIS. STAT. ch. 51 and ordering the involuntary administration of medication and treatment for six months. He contends Winnebago County failed to establish by clear and convincing evidence that he was dangerous pursuant to WIS. STAT. § 51.20(1)(a)2.b. For the following reasons, we disagree and affirm.

## *Background*

¶2 On May 12, 2022, the County filed a petition for examination of Thomas, seeking his commitment and the involuntary administration of medication and treatment.[3] At the June 9, 2022 hearing on the petition, the following relevant evidence was presented.

¶3 A sergeant from Waupun Correctional Institution testified that during his shift on March 24, 2022, he "opened up the trap" to Thomas' cell to dispense Thomas' medication, and as he did so, Thomas "went to a sink, rushed the trap, and then sprayed me [from a shampoo bottle] with an unknown liquid substance [that] ha[d] the aroma of urine and feces." The sergeant stated that the substance made contact with "[m]y face, my mouth, the right side of my body as

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Thomas is a pseudonym.

[3] Thomas is an inmate in the Wisconsin prison system. The County filed a petition for examination under WIS. STAT. § 51.20(1), not a petition for examination of a state prison inmate under § 51.20(1)(ar).

Because Thomas states in his appellate briefing that he "does not separately challenge the involuntary medication order," we discuss that no further.

far as my shirt and pants." The sergeant notified supervisors, washed his face, and went to the hospital "to get further treatment."

¶4 Doctor George Monese testified that he is employed as a staff psychiatrist at the Wisconsin Resource Center (WRC) and has served as Thomas' treating psychiatrist since 2016. He testified that Thomas suffers from "mental illness bipolar type, impulse control disorder, and anti-social personality disorder." He testified that following this March 2022 incident, Thomas was placed at the WRC and told Monese that he threw the substance at the officer because he believed the officers and others at Waupun "were out to get him. In other words, his delusions." In discussing benefits Thomas realized when he had previously been under a medication order, Monese explained that

> [t]he administrative confinement that [Thomas] was in for so many years had to be discontinued. He had to be escorted before by five people, he was moved from one unit to another in order to alleviate the stress because of his violence. But after taking the medication consistently, he did so well that all of those things disappeared and he regained status. [But] [h]e doesn't believe that the medications are helpful.

¶5 A psychiatric care technician at WRC testified that on April 27, 2022, Thomas complained to the technician about being given a used typewriter ribbon instead of a new one. Thomas "thought that staff was messing with him," and he made "[b]asically ... a planned threat" that he was going to have staff members "suit up,"[4] "com[e] in" and "then hurt staff." The technician was concerned for his colleagues and notified supervisors.

---

[4] The technician testified that "suit up" is a reference to a "cell extraction team. It's four to five guys and they go in and they remove him from his cell." The technician further testified that staff did not end up having to enter Thomas' cell that day.

¶6     Thomas then testified in relevant part that he does not "pose a danger" to anyone and that he did not "recall doing nothing to no one. I didn't do nothing to no one."

¶7     The circuit court found that the substance thrown at the sergeant in March 2022 was a "biological specimen which smelled of urine and feces." It determined inter alia that the County had met its burden of establishing that Thomas is dangerous, specifically under WIS. STAT. § 51.20(1)(a)2.b., based upon Thomas' throwing of the substance at the sergeant as well as his verbal threat to harm WRC staff. The court granted the County's petition, and Thomas appeals.

*Discussion*

¶8     A person is a proper subject for a commitment under WIS. STAT. § 51.20(1) if the County proves by clear and convincing evidence that the person is mentally ill, a proper subject for treatment, and dangerous to himself or others. *See* **Langlade County v. D.J.W.**, 2020 WI 41, ¶31, 391 Wis. 2d 231, 942 N.W.2d 277. Because Thomas does not dispute in this appeal the circuit court's determinations that he is mentally ill and a proper subject for treatment, we focus only on the determination he does dispute—that he is dangerous to others.

¶9     Whether the County met its burden presents a mixed question of law and fact. *See* **Waukesha County v. J.W.J.**, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous," **D.J.W.**, 391 Wis. 2d 231, ¶24, and "we accept reasonable inferences from the facts," **Winnebago County v. Christopher S.**, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). "[W]hether the facts satisfy the statutory standard" of dangerousness, however, is a question of law we review independently. **D.J.W.**, 391 Wis. 2d 231, ¶¶25, 47. On appeal, Thomas has the

4

burden to show that the circuit court erred. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381.

¶10 As relevant to this appeal, the County needed to show the circuit court that Thomas

> [e]vidences a substantial probability of physical harm to other individuals as manifested [(1)] by evidence of recent homicidal or other violent behavior, *or* [(2)] by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

WIS. STAT. § 51.20(1)(a)2.b. (emphasis added). The County only needed to establish that the evidence satisfied either (1) or (2), not both. Because we conclude the evidence satisfied (2), we need not discuss whether it also satisfied (1).

¶11 To satisfy (2), the County needed to show that Thomas "[e]vidences a substantial probability of physical harm" to others by presenting evidence "that others are placed in reasonable fear of violent behavior and serious physical harm to them," based upon "a recent overt act, attempt or threat to do serious physical harm." *See* WIS. STAT. § 51.20(1)(a)2.b. The County showed this.

¶12 Here, Thomas intentionally threw a biological substance reasonably inferred to contain urine and feces on a staff member in such a manner that the substance got into the staff member's mouth. Thomas had prepared the substance in a bottle in advance; it was ready to go when he attacked the sergeant with it. Thus, Thomas had preplanned this action. Just weeks later, Thomas, thinking he had purposefully been given the wrong typewriter ribbon, expressed that he was going to require staff to have to "suit up" and try to extract him from his cell "and then hurt staff."

5

¶13 Without analysis, Thomas claims in one sentence that even "the two incidents considered *together* [do not] meet either one of the alternatives." We disagree. Together, Thomas' recent overt act of planning and executing the throwing of a urine-feces substance at the sergeant, which had the potential to spread disease from Thomas to the sergeant, and the recent threat to "hurt staff" made directly to the WRC staff member respectively constitute an act and a threat "to do serious physical harm,"[5] would have placed others "in reasonable fear of violent behavior and serious physical harm," and particularly because they occurred within weeks of each other and without any provocation, "[e]vidence[d] a substantial probability" Thomas would cause physical harm to others. *See* WIS. STAT. § 51.20(1)(a)2.b. Thomas showed he was prepared and willing to engage in harmful physical contact with staff, again, without provocation.

¶14 Thomas claims his

> threat to "hurt" staff is too vague to constitute a threat to cause *serious* physical harm, as the statute requires. Nor is it specific enough to show that there is "a substantial probability" Tom will cause "physical harm" to others, particularly given the evidence that it was a single threat and that Tom did nothing to cause any disturbance, much less one that required a cell extraction.

He asserts that his "threat here created nothing more than a mere possibility and conjecture." We see things differently.

¶15 Thomas' threat showed his intent to require numerous officers to have to "suit up" and try to extract him from his cell, at which time he would

---

[5] We note that the legislature has seen fit to make it a Class I felony for a "prisoner confined to a state prison … [to] throw[] or expel[] … urine, feces or other bodily substance[s] at or toward an officer, employee or visitor of the prison." *See* WIS. STAT. § 946.43(2m).

intentionally "hurt" them. This threat gained elevated significance because it came just weeks after his preplanned and unprovoked throwing of a urine-feces substance at the sergeant at Waupun, which caused the sergeant to go to the hospital for treatment. With that act, Thomas had shown his willingness to cross the line from words to actual concerning physical contact with a person in a position of authority, again without provocation. The implication of Thomas' comments in the "suit up"-for-a-cell-extraction context was that he would, and was desirous of an opportunity to, get aggressively violent with staff. These incidents would place any reasonable staff member in fear of violent behavior of some type from Thomas that could cause serious physical harm to him/her and lead us to conclude the County sufficiently showed Thomas "[e]vidences a substantial probability of physical harm" to others. *See* WIS. STAT. § 51.20(1)(a)2.b.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.