COURT OF APPEALS
DECISION
DATED AND FILED

August 16, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2005**

Cir. Ct. No. **2021ME294**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF P.D.G.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

P.D.G.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed.*

¶1 NEUBAUER, J.[1] P.D.G. appeals from an order for involuntary medication and treatment. P.D.G. maintains that Winnebago County failed to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

carry its burden to prove that he received the statutorily required explanation of the advantages, disadvantages, and alternatives to his medication. This court disagrees and affirms.

## Background

¶2     In July 2021, the County petitioned the circuit court for a mental health commitment of and involuntary medication order for P.D.G., an inmate. The court ordered commitment following a jury trial at which the jury found P.D.G. to be mentally ill, dangerous to himself or others, and a proper subject for commitment. While the jury deliberated, the court heard further testimony at a bench trial on the involuntary medication and treatment issue. After the jury returned its verdict, the court found that the County had met its burden of proof to show "that the advantages, disadvantages, and alternatives to psychotropic medications were explained" to P.D.G. The court entered an order concluding that P.D.G. was "not competent to refuse psychotropic medication or treatment" because he was "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse psychotropic medications or treatment." The court thus ordered that medication and treatment be involuntarily administered during the period of P.D.G.'s commitment. P.D.G.'s challenge on appeal is limited to this order.

## Discussion

¶3     The County bears the burden of proving an individual's incompetence to refuse medication by clear and convincing evidence. *See* WIS. STAT. § 51.20(13)(e); *Outagamie County v. Melanie L.*, 2013 WI 67, ¶37, 349 Wis. 2d 148, 833 N.W.2d 607. The circuit court's findings of fact will not be

disturbed unless clearly erroneous, but whether the County met its burden of proof, which involves the application of facts to the statutory standard, is reviewed de novo. *Melanie L.*, 349 Wis. 2d 148, ¶¶38-39.

¶4    "[U]nder WIS. STAT. § 51.61, a person has the right to refuse medication unless a court determines that the person is incompetent to make such a decision." *Melanie L.*, 349 Wis. 2d 148, ¶53. Section 51.61(1)(g)4. sets forth two ways that a person who is mentally ill may be found incompetent to refuse such medication. First, the person may be found incompetent to refuse if he "is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives." Sec. 51.61(1)(g)4.a. Second, the person can be found incompetent if he "is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." Sec. 51.61(1)(g)4.b.

¶5    Before the circuit court can find an individual incompetent to refuse medication under either of these pathways, it must find that the individual has received "the requisite explanation of the advantages and disadvantages of and alternatives" to the particular medication in order to make an informed choice. *Melanie L.*, 349 Wis. 2d 148, ¶54; *see also* WIS. STAT. § 51.61(1)(g)4. Our supreme court explained this statutory requirement in *Melanie L.* as follows:

> A person subject to a possible mental commitment or a possible involuntary medication order is entitled to receive from one or more medical professionals a reasonable explanation of proposed medication. The explanation should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication. The explanation should be timely, and, ideally, it should be periodically repeated and reinforced. Medical

> professionals and other professionals should document the timing and frequency of their explanations so that, if necessary, they have documentary evidence to help establish this element in court.

*Melanie L.*, 349 Wis. 2d 148, ¶67.

¶6     Here, P.D.G.'s challenge is limited to whether the County failed to meet its burden of proof on the first aspect of this statutory standard—that is, on whether "the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual." *See* WIS. STAT. § 51.61(1)(g)4.  As explained below, this court concludes that the circuit court did not err in determining that the County proved by clear and convincing evidence, both through the testimony of Dr. Marshall Bales, a psychiatrist, and his written evaluation, that P.D.G. was provided with a reasonable explanation of the advantages, disadvantages, and alternatives to the two recommended psychotropic medications.

¶7     In his report, which was admitted into evidence, Bales stated that he provided P.D.G. with an explanation of the advantages, disadvantages and alternatives to two psychotropic medications, Prolixin and Cogentin.  Bales listed the advantages of the medications, which included "[s]tabilization of mood, improvement in reality orientation, improvement in sleep patterns, decrease in irritability and agitation, [and] decrease in anxiety."  Bales's report also listed the disadvantages he had explained to P.D.G., including "[m]etabolic issues, such as weight gain; occasional issues with movement problems, such as tremors, restlessness, or tardive dyskinesia; occasional mild sedation; [and] occasional gastrointestinal issues[.]"  Bales also listed the alternatives to medication explained to P.D.G., including "[p]sychotherapy, group therapy, [and] stress management tactics."

¶8 At trial, Bales opined that P.D.G. suffered from schizo-affective disorder, a condition similar to schizophrenia, which resulted in delusional thinking and mood instability. Bales testified in detail about the discussion he had with P.D.G. regarding the explanation of the psychotropic medications.

Q Were the advantages, disadvantages, and alternatives to accepting [psychotropic] medication explained to him?

A Yes, by me and others.

Q Can you recite one of the advantages that you discussed with him regarding medication?

A Well … I did state that some of his beliefs appear to be not based in reality, the Egyptian pharaoh, grandiose and paranoid statements, and I said it could help with all of those….

Q And correct me if I'm wrong: My understanding is one of the advantages that you told him was it could alleviate some of his delusional symptoms?

A Yes.

Q What's a disadvantage that you discussed with him?

A I said several things, and I go through a number of things, intestinal side effects, sedation, tiredness, shakes, tremors, yet I always emphasized with him that he work with [his] doctor to minimize side effects, and even if there are side effects then perhaps go to a different medication. And with all of that, I mentioned several side effects and listed them in my report ….

Q And what if any alternatives were discussed in lieu of or rather instead of taking medication?

A I said there were no good alternatives, but I said avoidance of street drugs, including herbs….

¶9 Bales confirmed on cross-examination that the discussion of the psychotropic medicine took place:

5

Q   Based on your written report, it looks like the conversation with [P.D.G.] regarding involuntary medication would come closer to the end of your evaluation, fair?

A   It was, it was toward the end, although, I discuss medications throughout and, as I recall, there was some discussion of the psychotropic medication during the interview but I—It was usually toward the end of my interview that I speak to the medication topic.

….

Q   Would you agree that you weren't able to have a meaningful conversation with [P.D.G.] regarding medication?

A   I was—I reviewed his psychotropics with him, but due to him talking over me, interrupting me in his florid psychotic state, it did—it impeded a reasonable discussion but there was the discussion.

¶10   Bales also elaborated on his explanation of alternatives to medication with P.D.G.:

Q   You did not discuss with him alternatives, including simply talk therapy or whatever you may call it in your profession.  Is that correct?

A   There are many alternatives and I mentioned some of those:  Sleep, exercise, diet, even sometimes people think prayer and so forth.  And I said that this is a chemical imbalance and there are not good alternatives.  He had to have medication, in so many words….

¶11   It is clear from Bales's report and testimony that these advantages, disadvantages, and alternatives were applicable to the recommended psychotropic medications identified in the report and about which Bales testified at the hearing.

¶12   This court agrees with the County that *Winnebago County v. Christopher S.*, 2016 WI 1, 366 Wis. 2d 1, 878 N.W.2d 109, supports its

contention that P.D.G. received the statutorily required explanation. In *Christopher S.*, our supreme court upheld an involuntary medication and treatment order based on testimony regarding an explanation that was far less detailed than what P.D.G. argues was insufficient here. 366 Wis. 2d 1, ¶¶54-56.[2] Regardless whether a minimal recitation of the statutory standard suffices at a bench trial, the record here contains clear and convincing evidence establishing that P.D.G. was provided with detailed information about the advantages, disadvantages, and alternatives to two psychotropic medications. What's more, unlike in *Melanie L.*, and as was the case in *Christopher S.*, Bales's expert testimony "closely tracked" the statutory language. *See Christopher S.*, 366 Wis. 2d 1, ¶¶52-54. There simply is no question that Bales applied the statutory standard in his detailed explanation to P.D.G. about the advantages, disadvantages, and alternatives to the psychotropic medications.

### *Conclusion*

¶13 For the reasons stated above, this court affirms the order for involuntary medication and treatment.

> *By the Court.*—Order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[2] While the decision recounts a doctor's affirmative response to the question whether the advantages, disadvantages, and alternatives to medication were explained to Christopher S., and another doctor reported a similar description, the concurrence/dissent stated that the record contained ample evidence that the advantages, disadvantages, and alternatives to medication were explained. *Winnebago County v. Christopher S.*, 2016 WI 1, ¶¶93-94, 366 Wis. 2d 1, 878 N.W.2d 109 (Abrahamson, J., concurring in part and dissenting in part).