COURT OF APPEALS
DECISION
DATED AND FILED

March 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2391-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME99

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF D.P.;

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

D.P.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed.*

¶1    LAZAR, J.[1] Daniel[2] appeals from orders of the trial court for extension of his WIS. STAT. ch. 51 commitment and for involuntary medication and treatment.[3] He asserts that Winnebago County failed to establish it reasonably explained the disadvantages of his medications to him and thus did not introduce sufficient evidence to support recommitment and involuntary medication. This court concludes under our supreme court's case law that the County introduced sufficient evidence and affirms.

¶2    The County sought Daniel's recommitment under WIS. STAT. § 51.20(1)(a)2.e (the "fifth standard" of dangerousness) and involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g)3m. This required the County to prove by clear and convincing evidence that, "because of mental illness," Daniel is incapable of making an informed choice whether to accept or refuse medication or treatment "after the advantages and disadvantages of and alternatives to accepting" the "particular medication or treatment have been explained" to him. Sec. 51.20(1)(a)2.e; 51.61(1)(g)3m; *see also **Outagamie County v. Melanie L.***, 2013 WI 67, ¶63, 349 Wis. 2d 148, 833 N.W.2d 607. At a contested hearing on the County's petition, Daniel's treating psychiatrist for more than five years, Dr. David Zerrien, testified that Daniel was prescribed the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] This court uses a pseudonym in order to protect the confidentiality of the subject individual. *See* WIS. STAT. RULE 809.19(1)(g).

[3] Although the notice of appeal identified only Daniel's involuntary medication order, Daniel argues that both orders must be vacated. We note that Daniel's extension of commitment order was entered on the same day as his involuntary medication order, so his notice of appeal is timely as to both orders. The County does not assert this court lacks jurisdiction to consider the order on extension of commitment or that it did not have adequate notice. This court will consider both orders.

antipsychotic drugs Fanapt and fluphenazine for his mental illness as well as several other medications. On direct examination by the County, Zerrien answered a question about his discussion of these medications with Daniel as follows:

> Q. And, doctor, have you reviewed the advantages, disadvantages, and alternatives of the medication that you just testified to?
>
> A. Right. I did. And I reviewed side effects with him. Where he became quite agitated is when we were talking about alternatives…. He became hostile in the visit so I discontinued talking about alternatives at that time.

¶3 Zerrien opined that Daniel was "incapable of expressing the advantages, disadvantages, and alternatives [of his medication] because he doesn't think he has a mental health problem." Zerrian also completed a report of his pre-hearing examination of Daniel, which was admitted into evidence. The report includes a section inviting the author to "[l]ist the disadvantages [of the recommended medication] explained [to the individual]." Zerrien wrote:

> I did talk to the patient about hyperprolactinemia[4] and he was frankly angry about that which is a problem for him on his current treatment unfortunately. He has a risk of sedation, tremulousness, dry mouth, amongst other side effects that were reviewed. We did talk about sedation related to the [prescribed sleep aid] as he is requesting an increase in that dose.

¶4 On cross-examination, Daniel's counsel briefly questioned Zerrien about his discussion of medication:

---

[4] Zerrian testified that hyperprolactinemia is a rise in prolactin levels that can cause breast tissue development.

> Q. You testified that you explored some of the disadvantages of [Daniel]'s current medication with him, correct?
>
> A. Yes.
>
> Q. And is one of the current side effects of that medication dry mouth?
>
> A. Yes.
>
> Q. Had [Daniel] expressed a concern about that to you?
>
> A. That's been a concern with his current treatment. The main concern for him is hyperprolactinemia. That's the thing I'm concerned about with him medically, that his prolactin level goes up on the Prolixin [fluphenazine] and it's been up on some other treatments he's been on. But we have not unfortunately been able to get fully away from that treatment or reduce it without him worsening psychiatrically.
>
> ….
>
> Q. Has [Daniel] expressed a concern about that?
>
> A. Yes, he has. And I've been concerned about it as well.

Counsel did not ask any questions relating to any other potential side effects or possible disadvantages of Daniel's recommended medication.

¶5 At the conclusion of the hearing, the trial court found "that the advantages, disadvantages, and the alternatives of the psychotropic medications have been explained to [Daniel], although the doctor had some difficulties with the alternatives in that [Daniel] was somewhat resistive to discussing those and did not have a willingness to engage in any discussion involving those alternatives." After determining that the other requirements for recommitment and involuntary medication were met, the court ordered both.

¶6      Daniel appeals based on a single issue: he argues that the County introduced insufficient evidence to establish that the disadvantages of the prescribed medication were explained to him such that both orders must be vacated under our supreme court's decision in *Melanie L.*, 349 Wis. 2d 148. Quoting that case, he asserts that—setting aside hyperprolactinemia, dry mouth, risk of sedation, and tremulousness—"[t]here is no evidence in the record that Dr. Zerrien ever explained to [Daniel] the other side-effects that 'may be anticipated or are possible.'" *See Melanie L.*, 349 Wis. 2d 148, ¶67. In particular, he lists additional "common and less common side-effects" included in the informed consent forms published by the Wisconsin Department of Health Services for Daniel's prescribed medications and argues that "[a]ny list of potential medication disadvantages that omits such risks … cannot be reasonable."

¶7      Whether the County has met its burden to prove all required facts by clear and convincing evidence is a mixed question of law and fact. *Langlade County v. D.J.W.*, 2020 WI 41, ¶¶23-24, 391 Wis. 2d 231, 942 N.W.2d 277. Findings of fact are upheld unless they are clearly erroneous. *Id.*, ¶24. Whether the facts satisfy the statutory standard requires a de novo review. *Id.*, ¶25. Daniel does not argue that any of the facts found by the trial court—based on Zerrien's testimony, which the court clearly found credible—were erroneous. Instead, he argues they were insufficient as a matter of law.

¶8      There is no merit to Daniel's argument.[5]  First, Daniel has identified no legal support for his contention that a doctor must discuss every possible side effect identified by DHS or any other organization.  And, as the County aptly points out, Zerrien's report states that he discussed certain enumerated disadvantages of Daniel's medication with Daniel "amongst other side effects that were reviewed."  Thus, Daniel has no basis for his statement that the listed side effects were the *only* ones discussed; he chose not to clarify which additional side effects were discussed when he chose not to question Zerrien about it at the hearing.

¶9      Moreover, Daniel relies on ***Melanie L.***, in which our supreme court held that individuals subject to involuntary medication orders must be given "a reasonable explanation of proposed medication," which "should include … what side effects may be anticipated or are possible."  349 Wis. 2d 148, ¶67.  The court vacated the medication order at issue in that case because the county's witness testified that the individual was unable to apply an understanding of the medication "to her advantage"—which is a misstatement of the statutory requirement that the individual be "'substantially incapable of applying' an understanding of the advantages, disadvantages, and alternatives of [the individual's] prescribed medication to [his or] her mental illness in order to make an informed choice." *Id.*, ¶¶30, 96-97.

---

[5] To quickly and simply dispose of this appeal, this court will set aside the County's contention that Daniel forfeited this argument by failing to raise it in the trial court (or conceded it by arguing in the trial court that he "ha[d] the ability" to apply an understanding of the advantages, disadvantages, and alternatives to the medication to make an informed choice) and evaluate the sufficiency of the County's evidence.

¶10     But in ***Winnebago County v. Christopher S.***, 2016 WI 1, ¶57, 366 Wis. 2d 1, 878 N.W.2d 109, decided three years after ***Melanie L.***, our supreme court upheld an involuntary medication order based on testimony much less detailed than Zerrien's in this case:

> Q.     Dr. Keshena, in the course of your treatment of [Christopher] have you had an opportunity to explain to him the advantages, disadvantages, and alternatives to the medication?
>
> A.     Yes.

***Christopher S.***, 366 Wis. 2d 1, ¶54 (alteration in original). As in this case, the testimony was not disputed and there was also a report indicating that "the advantages and disadvantages and the alternatives to accepting particular medication [were] explained to the subject in detail[]." *See id.*, ¶¶55-56 (alterations in original). Our supreme court stated that "[b]ecause these statements mirrored the statutory standard, they met the statutory standard." *Id.*, ¶56.

¶11     There simply is no question that Zerrien applied the statutory standard in his explanation to Daniel about the disadvantages to the medications at issue. Both Daniel's extension of commitment order and his involuntary medication order are, accordingly, affirmed.

>     *By the Court.*—Orders affirmed.

>     This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.