**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 6, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2025AP2522**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023ME54

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF D.J.F.:

WALWORTH COUNTY,

    PETITIONER-RESPONDENT,

  V.

D.J.F.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed*.

¶1 GUNDRUM, J.[1] D.J.F. appeals from circuit court orders extending his involuntary commitment, pursuant to WIS. STAT. § 51.20, for twelve months

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

and allowing for the involuntary administration of medication and treatment during that time. He contends Walworth County (the County) failed to present sufficient evidence to prove he is currently dangerous under § 51.20(1)(a)2. For the following reasons, we disagree and affirm.

## BACKGROUND

¶2 The County filed a petition to extend D.J.F.'s commitment for one year under WIS. STAT. ch. 51. The circuit court held a hearing, during which the following relevant evidence was presented.

¶3 The expert psychiatrist who had been treating D.J.F. for more than a year prior to the hearing and who had examined him less than two weeks prior testified that D.J.F. suffers from schizoaffective disorder and "has been in treatment at least since 2016." D.J.F. has paranoia about medications and "things being added to his—to the water and things like that." His condition is primarily treatable through medications, but D.J.F. "believes that he does not have mental illness" and has made it clear he will not take medication unless court ordered.

¶4 When D.J.F. is taking medication under court order, he "demonstrates less paranoia, he's able to function in the community or at his current group home. When he is off of medications, he becomes paranoid and delusional." The psychiatrist was aware of "at least two previous commitments [of D.J.F.] as well as at least one settlement agreement." She testified that he would become a proper subject for commitment if his treatment were withdrawn, noting that this had occurred with him in the past. She explained that "[h]e shows no recognition of the pattern between multiple times in the past when he has stopped medications that he has decompensated, required emergency detention and then been placed back on commitment." She added that "if he stops

2

medications, he likely will decompensate and require hospitalization [in a locked inpatient facility]." She testified that he would be a danger to himself if treatment were withdrawn, stating that "[i]n the past he has become suicidal by not taking medications. He has tried to strangle himself as a suicide attempt. He also engages in reckless and impulsive behaviors without prior planning or forethought when off medications."

¶5     The circuit court admitted the psychiatrist's report into evidence. The report mirrored much of the psychiatrist's testimony but also indicated that in connection with the incidents leading to his current commitment, D.J.F. had informed the psychiatrist that "he was huffing at the time and said he was suicidal 'so [he] wouldn't get in trouble.'" D.J.F., however, denied to the psychiatrist that he really had wanted to kill himself.

¶6     D.J.F.'s mother, who also serves as his guardian, also testified. She explained that in connection with D.J.F.'s current commitment, D.J.F. had been hospitalized for approximately six weeks because he had "not [been] drinking any fluids[, and] [h]e ended up in the ICU with a kidney injury," which led to his emergent detention and the commitment.

¶7     During that hospitalization and while in restraints, D.J.F. told her "he was going to kill" her. Also, when asked if D.J.F. had ever threatened to hurt her, she stated, "Not directly," elaborating that "[t]here was a time or two that he thought I was evil, like something took over me …." On those occasions, he expressed to her "[t]hat … I was taken over by something evil that he had to take care of to end." She expressed that she did not believe it was "healthy" for D.J.F. to stop taking medication, indicating that when he is on medication, "he stays safe … and is less impulsive."

¶8     Following the hearing, the circuit court determined that the WIS. STAT. § 51.20 standards for recommitment had been met.  The court determined that D.J.F. suffers from a treatable mental illness and would be a proper subject for commitment if treatment were withdrawn.

¶9     The circuit court concluded D.J.F. was dangerous under the standards of both WIS. STAT. § 51.20(1)(a)2.a. and c.  Specifically related to subpara. (a)2.a., the court found that when D.J.F. is not under commitment, he stops treatment and "again decompensate[s]."  The court was "very concern[ed]" that he will not take medication if not under court order, specifically noting D.J.F.'s past suicidal ideations and attempt to strangle himself.  "The concern is that if you go off of treatment, … there's a substantial likelihood you'd be at risk to yourself because of that.  You engage in reckless and impulsive behaviors when you're not under treatment and … on your medications."  The court pointed to the testimony of D.J.F.'s mother

> that you ended up in … the intensive care unit[] with kidney issues because you weren't hydrating properly.  That, to me, is substantial evidence of substantial risk to yourself.  People don't wind up in the ICU level of a hospital with kidney problems for something that's minor or that's not serious.

In addition to ordering D.J.F.'s recommitment, the court also entered an order for D.J.F.'s involuntary medication.

¶10     D.J.F. appeals.

## DISCUSSION

¶11     An individual is a proper subject for recommitment under WIS. STAT. § 51.20(1) if the County proves by clear and convincing evidence that the

4

individual is mentally ill, a proper subject for treatment, and dangerous to himself or others. *See **Langlade County v. D.J.W.**, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277; § 51.20(1)(a), (13)(e). Of these three, D.J.F. only challenges the circuit court's determination that he is dangerous, so that is our focus.

¶12 Whether the County met its burden of proof to support D.J.F.'s recommitment presents a mixed question of law and fact. *See **Waukesha County v. J.W.J.**, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous," **D.J.W.**, 391 Wis. 2d 231, ¶24, and "we accept reasonable inferences from the facts," **Winnebago County v. Christopher S.**, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). Whether the facts satisfy the statutory standard, however, is a question of law we review independently. **D.J.W.**, 391 Wis. 2d 231, ¶25; **Outagamie County v. Melanie L.**, 2013 WI 67, ¶39, 349 Wis. 2d 148, 833 N.W.2d 607. As the one appealing the circuit court's orders, D.J.F. has the burden to show that the court erred. *See **Gaethke v. Pozder**, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381.

¶13 D.J.F. contends there was insufficient evidence presented to support the circuit court's determination that he is dangerous under the standards of WIS. STAT. § 51.20(1)(a)2.a.-e. Because we conclude the evidence supports the court's determination that D.J.F. met the dangerousness standard of § 51.20(1)(a)2.a., "by way of the recommitment alternative … § 51.20(1)(am)," we need not consider the other standards. *See **Sauk County v. S.A.M.**, 2022 WI 46, ¶¶5, 32, 402 Wis. 2d 379, 975 N.W.2d 162 ("If the government presents clear and convincing evidence that the committed person remains mentally ill, treatable, and dangerous under one of the five standards … then the court must order that person recommitted ….").

¶14 WISCONSIN STAT. § 51.20(1)(a)2.a. provides that an individual's dangerousness is established if the person "[e]vidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm." Because this is a recommitment, as opposed to an initial commitment, the County did not need to show "a *recent …* attempt or threat to act"; instead, that requirement "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am) (emphasis added). As our supreme court has explained, a *recent* attempt or threat to act need not be shown for a recommitment because para. (1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. In this case, that means the County had to show that D.J.F. would become dangerous if treatment were withdrawn, specifically that "there may be a substantial likelihood" "of physical harm to himself." The County sufficiently showed this.

¶15 It is undisputed that D.J.F. has a history of refusing to take medication if not court ordered, subsequently decompensating, and being rehospitalized and emergently detained. The evidence presented at the recommitment hearing showed that D.J.F. has attempted to strangle himself and the psychiatrist's report indicated he "has a history of suicidal ideation when off medications." Additionally, he had not been taking his medication prior to his hospitalization in the ICU for dehydration, which caused harm to his kidney. The evidence showed that he has attempted to kill himself and caused serious bodily

6

harm to himself, supporting the circuit court's determination that if he is not under court-ordered recommitment, D.J.F. will not receive the medication critically necessary for stabilizing his mental health, will then very likely decompensate again and, with that, become a significant physical risk to himself.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.